## BROOK and others vs. CHAPPELL.

WILLS.    (1) *Nuncupative codicil,* pro tanto *revoking a written will, invalid.*

COUNTY COURT.    (2–5, 10–13) *Its jurisdiction and powers.*

TRUSTS.    (6–8) *A residuary legatee declared trustee for petitioners, for payment of legacies, which testator had been by his fraud induced to omit making provision for in his will.*

COSTS:    (14) *In county court, and on appeal.*

1. Under our statute (R. S., ch. 97, sec. 10), a nuncupative codicil to a written will, operating *pro tanto* as a revocation of the will, is prohibited.

2. The county court, sitting in probate, is not limited to granting or refusing the precise relief asked in an application made to it, but, within its jurisdiction, especially where the parties opposed in interest are present or are represented, it may grant any relief consistent with the facts proved and which the justice of the case demands. R. S., ch. 117.

3. It is sufficient in such a case that the petition show a valid subsisting right in favor of the petitioner, and assert it in general terms, though not with the particularity of pleadings in courts of general jurisdiction. And the court may grant any relief consistent with the case made, *without any prayer* for relief, or *different* from that prayed for.

4. The county court, in the probate of wills or the settlement of estates, may *grant equitable relief,* or *enforce a trust,* and may recognize and enforce an *equitable estoppel;* and the jurisdiction of chancery in such case is merely *concurrent. Jackman Will Case,* 26 Wis., 104; 5 id., 95.

| 34 | 405 |
| --- | --- |
| 81 | 206 |
| 34 | 405 |
| 83 | 444 |
| 34 | 405 |
| 89 | 118 |
| 34 | 405 |
| 90 | 486 |
| 34 | 405 |
| 92 | 573 |
| 34 | 405 |
| 95 | 204 |
| 34 | 405 |
| 100 | 7 |
| 101 | 442 |
| 34 | 405 |
| 111 | 6 77 |
| 111 | 3257 |
| 34 | 405 |
| 53 LRA | 761 |

5. Nor will the county court be prevented from granting to a party interested in the settlement of an estate, the relief to which he shows himself entitled, by the fact that he would have a remedy by action *in a court of law.*

6. Where the *residuary legatee* named in a will promised the testator that he would pay to certain persons certain sums as legacies, and the testator was thus induced to omit changing his will in that respect, or adding such provisions thereto by written codicil: *Held,* that these facts are sufficient to *establish a trust* in favor of such proposed legatees, and against such residuary legatee, for the amounts so agreed to be paid.

7. Such a trust will be declared upon an *implied* as well as upon an *express promise;* and evidence of *silent assent,* as well as of express words, is sufficient.

8. Where the intended beneficiaries applied in such a case to the county court to have such provision in their behalf established as a nuncupative codicil to the will, and judgment was rendered to that effect: *Held,* that the *circuit court,* on appeal, should not have merely reversed the decision of the county court, but should have *adjudged a trust* in favor of the petitioners and against the residuary legatee, or should have remitted the cause to the county court with directions to enter such a judgment.

9. In any action, at law or in equity, except where there is no answer, plaintiff is entitled (upon due proof made) to *any relief consistent with the case* made by the complaint and embraced within the issue, though not the relief specifically demanded. *Leonard v. Rogan,* 20 Wis., 540, and other cases in this court.

10. In proceedings in the probate court, there being no formal pleadings, the *appearance* of the party interested adversely to the petition, and his opposition thereto, must be held *tantamount to an answer* in other cases.

11. It must be presumed, in this case, that the residuary legatee, who appeared and resisted the claim of the petitioners in the court below, denied their right to any relief consistent with the facts stated in their petition, and the proofs made at the hearing; and he cannot, on appeal, be heard to deny their right to a judgment declaring a trust in their favor, on the ground that he had had no apportunity to be heard upon the question of such trust, and that he merely contested their right to the relief demanded in their petition.

12. The petitioners herein might, at their own option, have waited until the estate was settled and the property had come into the hands of the residuary legatee under the will, and might then have called upon him to recognize the trust by paying them the sums which he had promised the testator to pay, and, upon his refusal to do so, might

have brought suit in equity to enforce the trust; but they were also entitled, if they so elected, to institute proceedings in the county court and obtain a decree declaring the trust and giving effect to it as a part of the testator's testamentary disposition of his property; the proceeding being in the nature of a bill *quia timet*.

13. Whether the relief to be granted by the county court in this case should be in the form of an independent order establishing the trust and directing payment of the moneys by the trustees out of the estate of the testator, or in the form of a judgment modifying to that extent the previous order admitting the will to probate, is not here determined. A judgment in either form will probably be sufficient, though the latter may be in some respects preferable.

14. The *costs* in the county and circuit courts in this case should be paid *out of the estate.* 26 Wis., 143. The costs in this court are ordered to be paid by the residuary legatee, the respondent in the appeal.

APPEAL from the Circuit Court for *Jefferson* County.

In 1872, *F. P. Brook*, one of the appellants and one of the executors named in the last will and testament of Wm. Chappell, deceased, filed a petition in the county court of Jefferson county, where such testator died and where his last will was proved, stating that such testator had, during his last illness, made a nuncupative codicil to his said will, by which he directed the payment of various legacies in addition to those provided in his will, to the amount in all of about $1,700, and asking that said codicil might be admitted to probate. From an order of the county court, allowing such nuncupative codicil, *James K. Chappell*, to whom, by the written will, the whole of the testator's property was bequeathed subject to the payment of certain legacies, took an appeal to the circuit court.

The facts disclosed upon the trial of such appeal were as follows: William Chappell, the testator, during his last sickness, and when he thought himself dying, though in reality some thirty days before his death, called respondent to him in the presence of several witnesses, and told him there were some other persons to whom he wished to give something, and directed him to get a pencil and paper and take down what should be told him. He then named over the persons to whom

Brook and others vs. Chappell.

he wished to give legacies, with the amounts to be paid each, respondent taking them down as given him, and finally charged respondent to carry out such directions as faithfully as those contained in his will. It does not appear that respondent made any objection, or refused to carry out the instructions of the testator; while one witness testifies that when the testator had finished speaking, respondent replied, "Well."

The circuit court reversed the order of the probate court, allowing such nuncupative codicil; and the petitioner and proposed legatees under the codicil appealed.

*Harlow Pease,* for appellants :

A nuncupative codicil to a written will is recognized by law. 2 Wend. Black. Com., 500; R. S. 1858, ch. 5, sec. 21, and ch. 97. In this case the statute relating to nuncupative wills was complied with, and the codicil was valid, unless it amounted to a revocation of the written will. The will and the codicil must be construed together as one instrument, and the intention of the testator must govern. 4 Kent's Com., 534, 537 ; *Collier v. Collier,* 3 Ohio St., 369; *Westcott v. Cady,* 5 Johns. Ch., 343. Additional legacies given by codicil are attended by the same incidents and qualities as original legacies. *Tilden v. Tilden,* 13 Gray, 103, and cases cited. The codicil does not expressly revoke the will, nor does it defeat any of its provisions, or make any incompatible disposition of the property. It simply disposes of part of the residuum, and does not, therefore, amount to a revocation. 4 Kent's Com., 527–30, 541, 545 ; *Westcott v. Cady,* cited *supra;* Redfield on Wills, 193. Respondent was present when the codicil was made, and assented to it. He is therefore estopped from now disputing it. *Parsons v. Parsons,* 2 Greenl., 298. As to cumulative legacies see *Hooley v. Hutton,* 2 Dickens, 461; *Ridges v. Morrison,* 1 Brown Ch., 341; 2 Ves., 293–5, 465–6; 5 id., 380–1. As to costs, see *Jackman Will Case,* 26 Wis., 364.

*Enos & Hall,* for respondent :

The effect of the codicil, if allowed, would be to take $1,650·

from the property bequeathed to *James K. Chappell*, and transfer it to other parties.   It would amount, therefore, to a revocation, *pro, tanto*, of the will, which cannot be accomplished by a nuncupative codicil.   R. S. 1858, ch. 97, sec. 10.   Even if the two were compatible and could exist together, the codicil is invalid.   The testator did not declare it to be a codicil to his will, nor request any one to witness it as such.   See *Dawson's Appeal*, 23 Wis., 69; R. S., ch. 97, sec. 6.   He was not *in extremis* at the time of making such pretended codicil, but lived more than thirty days afterward, during all of which time he was competent to change his will or make a new one.   *Prince v. Hazleton*, 20 Johns., 502; 2 Black. Com., 500; *Bronson v. Burnett*, 1 Chand., 136.

DIXON, C. J.   As a nuncupative codicil to a written will, this application and the decree of the probate court thereon cannot be sustained.   As a mere nuncupative will, standing alone and not affecting nor intended to affect the provisions of a written will, the ceremonies observed and proofs introduced are sufficient, probably, to establish it within the requirements of the statute regulating the making of wills of that kind.   R. S., ch. 97, sec. 5 ;   2 Tay. Stats., 1204, § 5.   But the difficulty springs from the fact that, as a nuncupative codicil, it operates *pro tanto* as a revocation of the written will, which is forbidden by section 10 of the same chapter.   By that section, no codicil, except it be *in writing*, and executed as prescribed in the chapter, can operate as a revocation of a written will or of *any part* thereof.   The language of section 10 is:   "No will, nor any part thereof, shall be revoked, unless by burning, tearing, cancelling or obliterating the same with the intention of revoking it, by the testator or by some person in his presence and by his direction, or by some other will or codicil, in writing, executed as prescribed in this chapter, or by some other writing signed, attested and subscribed in the manner provided in this chapter for the execution of a will; excepting only, that nothing contained in this section shall prevent the revocation implied by

law from subsequent changes in the condition or circumstances of the testator."

But although the county court erred in deciding that the words spoken by the testator constituted a nuncupative codicil to his written will, and in ordering that the same be admitted and approved as such, we are yet of opinion, upon the undisputed facts presented, that the circuit court also erred in directing the mere reversal of the judgment or order of the county court, thus denying the rights of the petitioner or those whom he represented to any relief in the premises and putting an end to their application, instead of rendering such other judgment in their favor, or directing the county court to render it, as by the law and the facts shown they were entitled to have rendered. We do not suppose the county court, sitting in probate, is limited to granting or refusing the precise relief asked on such application, but are of opinion that, acting within its jurisdiction, it may, especially where the parties opposed in interest are present or are represented, grant any relief consistent with the facts proved or admitted and which the justice of the case demands. The same strictness of pleading is not requisite in the assertion of rights in that court, as in the courts of general common law jurisdiction. It is sufficient if the petition show a valid subsisting right in favor of the petitioner, and assert it in general terms, although not with the particularity of pleadings in courts of general jurisdiction. *Flinn v. Shackleford,* 42 Ala., 202. And see *Amory v. Amory,* 26 Wis., 152, where it was held that the court may grant any relief consistent with the case made, without any prayer for relief, or different from that prayed for. The powers possessed by the county court are the same as those conferred upon the circuit court on appeals from its orders and judgments, which are very broad and comprehensive. The statute declares: " The circuit court may reverse or affirm, in whole or in part, the sentence or act appealed from, and may render such judgment as may be proper, or make such order

thereon as the judge of the county court ought to have made, and may remit the case to the county court for further proceedings, or may take any other order therein, as law and justice shall require." R. S., ch. 117, sec. 34 ; 2 Tay. Stats., 1315, § 34. We are of opinion, therefore, that the circuit court should have rendered a judgment, or have remanded the case to the county court directing it to render a judgment, establishing and confirming a trust in favor of the petitioners or parties interested in the application, against *James K. Chappell*, the residuary legatee and one of the executors named in the written will, and the person who appears as the party defendant in these proceedings, according to the principles of equity governing the case, and which will be hereafter stated in this opinion. We do not now undertake to say whether this should be in the form of an independent order or decree of the county court, establishing the trust and directing payment of the moneys by the trustees out of the estate or effects of the testator, or whether it should take the form of a judgment modifying to that extent the previous order admitting the written will to probate and adjudging the validity of the same. It is probable that a judgment in either form will be sufficient, though the latter may be thought, in some respects, preferable.

Of the power of the county court in probate to grant the relief here spoken of, this court feels entirely confident. It has all the jurisdiction, both legal and equitable, unless expressly reserved, necessary to the due administration of the estates of deceased persons and to the performance of all acts required in the course of such administration, including the probate of wills and the giving effect to the intention of testators, whenever such intentions may be effectuated by the powers and processes possessed and used by any court of justice. It may grant equitable relief or enforce a trust in a case of this nature, the same as a court of equity ; and although the jurisdiction of a court of equity still exists, it does not oust that of the county court in a proper case. The doctrine of equita-

ble estoppel may be recognized, and its principles enforced, as well by the county court as by the court of chancery, the jurisdiction of the latter being concurrent, merely, in any matter pertaining to the settlement of the estates of deceased persons. And it is immaterial, also, that the petitioners, or parties seeking redress in the probate court, may have their remedy by action in a court of law as well. It is not unlikely, and indeed there seems to be good authority for holding, that the claimants here might have their remedy against the residuary legatee by action of *assumpsit*, or in that nature, to recover the amounts of their supposed respective bequests verbally directed by the testator to be paid to them and promised and agreed to be paid by the residuary legatee, and which, in the eye of equity, constitute as valid bequests or legacies, and bind and oblige the residuary legatee as firmly, as if they had been inserted in the written will itself. This, either upon the ground of equitable estoppel, or of fraud, or of the residuary legatee's promise made to the testator that he would pay, is the view which a court of equity or of law must have taken; and it is the same view the county court was at liberty to take, and which it was authorized to carry into effect by the making and entry of the appropriate order or judgment upon its records. The jurisdiction of the county court is declared by sections 5 and 6 of chapter 117, R. S., last above cited; 2 Tay. Stats., 1310, §§ 5, 6. Section five confers power to take the probate of wills, and to grant letters testamentary and of administration on the estate of all persons deceased, residents or inhabitants of the county at the time of their decease, or dying without the state and leaving any estate within the county to be administered, and to appoint guardians to minors and others in the cases prescribed by law. The powers thus given respecting the taking of the probate of wills and granting of letters testamentary and of administration are exclusive, and have always been so held. Section six enacts: "The judge of the county court shall have jurisdiction of *all matters pertaining to the settlement of the estate*

*of such deceased persons,* and of such minors and others under guardianship." The jurisdiction here conferred is coextensive with that possessed by any court of equity or of law in a case of this description, which clearly relates to the settlement and distribution of the estate of the testator. Section 7 gives the judge power to administer all oaths necessary in the transaction of business before the county court; and section 8, the power to issue all warrants and processes, in conformity to the rules of law, which may be necessary to compel the attendance of witnesses, etc. Other provisions might be pointed to in confirmation of the views here expressed; but it is deemed unnecessary. The plenary powers of the court of probate in all matters within its jurisdiction, have often been recognized by this court: and we do not know that they are or will be seriously questioned by any one. They are spoken of by Judge Redfield in his work on the law of wills, Part II, p. 12, as being universally accepted in all the American states, and the equitable jurisdiction of the court, or its authority to proceed in the administration of justice according to the principles and practice prevailing in the court of chancery, are affirmed in *Jackman Will Case,* 26 Wis., 104, 109, 110, and in *Ketchum v. Walsworth,* 5 Wis., 95, 105.

We come now to consider what judgment the county court ought to have rendered, or what judgment the circuit court should have rendered, or have remitted the case to the county court with directions to render. As already observed, the facts are clear and undisputed, that the residuary legatee promised the testator that he would pay to the petitioners the legacies or portions in controversy and claimed by them in their application; and the conclusion is equally clear and not to be questioned, that the testator was induced to omit and did omit the making of the same provisions in his written will or in a codicil to be annexed to that will. No one can doubt that, had the residuary legatee refused to comply with the request of the testator, a written will or codicil to the same effect would have

been prepared and executed. We say the residuary legatee promised the testator to pay these bequests. It is true, only one witness testifies to facts showing an express promise. But a promise in such case may be implied as well as expressed. Trusts of this nature may be created by silent assent as well as by express words. *Byrn v. Godfrey*, 4 Vesey, 10 ; *Paine v. Hall*, 18 id, 475. Four witnesses testify positively to the facts, without one word in contradiction from the residuary legatee. This being so, the conclusion that the interview and conversation between the testator and the residuary legatee were just as those witnesses represent, is irresistible. It is equivalent to an admission of the facts by the residuary legatee, which, as Lord HARDWICKE observes in a similar case (*Sheffield v. Duchess of Buckingham*, 1 Atk., 629), is stronger than if determined by a jury.

With respect to the law in such case it is thus briefly stated in Redfield on the Law of Wills, part I, p. 512 : "In every case where one induces the testator to omit a provision in a will on behalf of another, by assurances that he, being the heir, or personal representative, or residuary legatee, will see such person paid such legacy or other provision, it is treated as an estoppel upon the party, or a virtual fraud to refuse performance, whereby a legal duty is imposed, and it will be enforced in a court of equity." See also 1 Story's Eq. Jur., § 256.

As a full discussion of the question under consideration, and examination of the authorities, both by court and counsel, it is probable that no more interesting or instructive case is to be found in the books than that of *Hoge v. Hoge*, 1 Watts, 163. The effort there was, and it was attended with success, to convert by parol evidence a devise of land absolute by the testator to his brother John Hoge, into an estate in trust for the use and benefit of one William Hoge, an illegitimate son of the testator. The parol evidence introduced consisted of declarations of the testator made contemporaneously with his will, and they were held competent evidence to establish a trust in him

to whom the absolute estate was devised, when followed by evidence that such devise was obtained by the fraudulent procurement of the devisee. The opinion of the court by GIBSON, J., reviews many of the previous decisions, and, like all the productions of that learned judge, is remarkable for the clearness and force of its statements, and the close and accurate discriminations made. We can not at this time do the profession a greater service or more correctly state the law than by quoting at considerable length from the opinion. The learned judge says: "Contemporary declarations of a testator have always been not only competent but powerful evidence of the fact declared; and the competency of declarations by the devisee, while he was the owner of the land, will not be disputed. Indeed, the objection was rather to the fact itself than the evidence of it; and it is contended that parol evidence of a trust is contrary to our statute of wills, which corresponds, as far as regards the point in dispute, with the British statute of frauds. Undoubtedly every part of a will must be in writing, and a naked parol declaration of trust, in respect of land devised, is void. The trust insisted on here, however, owes its validity, not to the will or the declaration of the testator, but to the fraud of the devisee. It belongs to a class in which the trust arises *ex maleficio*, and in which equity turns the fraudulent procurer of the legal title into a trustee, to get at him; and there is nothing in reason or authority to forbid the raising of such a trust from the surreptitious procurement of a devise. In *Dixon v. Olmius*, Cox's Chan. Ca., 414, a devisee who had been guilty of several acts of fraud and violence, particularly in preventing an attorney, sent for by the testator to alter his will, from entering the bedroom, was promptly declared a trustee for the party intended to have been benefited by the alteration. The question has been as to the circumstances which constitute such a fraud as will be made the foundation of a decree. A mere refusal to perform the trust is undoubtedly not enough; else the statute which requires a will of land to be in writing,

would be altogether inoperative; and it seems to be requisite that there should appear to have been an agency, active or passive, on the part of the devisee in procuring the devise. In *Whitton v. Russell*, 1 Atk., 488, it was thought, by high authority, that even a promise to the testator to perform the trust was not such an agency, because, as it was said, the fraud, if any, consisted not in the procurement of the will, but in the subsequent refusal to perform it; and that every breach of promise is not a fraud. But it was also thought that the testator had not, in fact, been drawn to make the will by the promise, and on no other ground is the decision to be reconciled to a train of authorities by which it is conclusively established, that if he has executed his will on the faith of such a promise, the devisee shall be compelled to make it good. In *Harris v. Harwell*, Gilb. Eq. Rep., 11, a testator who had devised all his land to his nephew, desired his heir-at-law not to disturb him in the possession of certain after-purchased lands; and it was so decreed. So in *Chamberlaine v. Chamberlaine*, 2 Freem., 34, a testator, having settled lands on his son for life, and having discourse about altering his will, for fear there should not be enough beside to pay certain legacies to his daughters, was told by his son that he would pay them if the assets were deficient; but afterwards, pretending that the lands devised to him fell short of these legacies, filed his bill to have a sum alleged to be equal to the deficiency raised out of other parts of the estate; and it was decreed that, *having suffered his father to die in peace on a promise which had prevented him from altering his will*, he should pay them himself; the chancellor further remarking that it was the constant practice of the court to make decrees on such promises. That was a strong case, as the relief claimed would probably have put the son in no better condition than if the alteration had been made. To the same effect is *Devenish v. Baines*, Prec. in Chan., 3, in which a copyholder, intending to devise the greater part of his copyhold to his godson, and advising with the copyholders how that might best be done, was

prevailed upon by his wife to nominate her to the whole, on her promising to give the godson the part intended for him; and it was decreed against the wife, notwithstanding the statute of frauds. And in *Oldham v. Litchfield*, 2 Vernon, 506, lands were charged with an annuity, on proof that the testator was prevented from charging them in his will by a promise of payment by the devisee. There are many other decisions to the same point; but I shall cite no more than *Thynn v. Thynn*, 1 Vernon, 296, in which a son induced his mother, by promising to be a trustee to her use, to prevail on her husband to make a new will, and appoint him executor in her stead; and he was so decreed. I have also cited these authorities with a particular reference to their circumstances, to show that the difference taken in the argument between real and personal estate is without foundation."

" The principle of the relief to be granted is very satisfactorily disclosed by Lord HARDWICKE, in *Reech v. Kennegal*, 1 Ves., 122, where an *executor and residuary legatee, who had promised to pay a legacy not in the will*, was decreed to discharge it out of the assets; and I shall close my remarks on this part of the case with a recapitulation of his introductory observations. The rule of law and of the court, said the chancellor, strengthened by the statute, is, that all the legacies must be written in the will; and that all the arguments against breaking in on wills by parol proof are well founded. But notwithstanding that, the court had adhered to the principle that whenever a case is infected with fraud, the court will not suffer the statute to protect it, so that any one shall run away with a benefit not intended. The question was, whether the allegation of fraud was strengthened by the promise of the defendant; and he was of opinion that it was. That it had been taken that the fraud must be on him who might have remedy by law; but the court considered it as a fraud also on the testator. To apply this case to the case at bar. If the testator was induced by the promise of his brother, much more if by his suggestion, to believe

that a devise to him was the most prudent plan of securing the estate to his illegitimate son, it cannot be said that a breach of confidence thus reposed in him was intended to be protected by the statute; and with a direction to this effect, the point was put to the jury." No remarks are necessary to point application of this language to the facts of the present case; and other decisions to the same effect will be found numerously cited in Redfield and Story, *supra.* See also *Philadelphia Library Co. v. Williams* (Sup. Ct. Pa., May 19, 1873), 3 Bench and Bar, N. S., 154.

We cannot close this opinion without reference to the recent case of *Horn v. Cole* (Sup. Ct. N. H.), 12 ·Am. Law Reg., N. S., 303, as containing a most full and lucid examination of the doctrine of equitable estoppel as it has been applied in various cases, and showing the distinction between that and estoppels of other kinds. It will be seen from a perusal of the opinion, that the estoppel is directly applicable to the residuary legatee here. Chief Justice PERLEY there says: "It has been declared in many cases that the equitable estoppel involves a question of legal ethics, and applies wherever a party has made a representation, by words or conduct, which he cannot in equity and good conscience prove to be false; and that this kind of estoppel, being a broad doctrine of equity, cannot be limited in application by the terms of any narrow legal definition."

It follows from these views that the judgment of the circuit court must be reversed, and the cause remanded to that court to render the proper judgment in accordance with the principles laid down in this opinion, and to remit the case to the county court for further proceedings; or otherwise, that the circuit court, according to the authority vested in it by the statutes, give such order and direction to the county court that the proper judgment may be rendered and entered of record by the latter, which should have been rendered on the first hearing of the application.

*By the Court.* — It is so ordered.

*Order as to costs.* The costs in the circuit and county courts should be paid out of the estate. 26 Wis., 143. The costs in this court must be taxed, and judgment therefor rendered, against *James K. Chappell*, the residuary legatee and respondent in this appeal.

Upon a motion, by respondent, for a rehearing, the following opinion was filed at the January term, 1874:

Dixon C. J. The learned counsel for the respondent, *Chappell*, in support of their motion for a rehearing, do not question the jurisdiction of the court of probate under proper circumstances to enforce a trust of the kind involved in this proceeding. The power of probate, in a proper case, to make the necessary decree and to compel submission to the directions of the testator, verbally given and assented to as shown by the record, and a compliance with his wishes as therein expressed, in the same manner as a court of equity could do, is conceded; but it is said that this is not the proper case for the exercise of such power. It is urged that the proceeding was not instituted with such design, and that, if it had been, it was premature, and no relief of the kind should have been granted.

The first objection is perhaps sufficiently answered in the opinion already filed. It is immaterial that the petitioners erroneously supposed themselves entitled to some different relief, which they asked, and that they failed to ask that which the law and the facts showed was their right. The respondent appeared before the probate court and contested the application. His appearance and opposition was equivalent to an answer in other cases. Beyond the petition there are no pleadings in the probate court. No formal answer on the part of the respondent was or could be required. In any action at law or suit in equity, except where there is no answer, the plaintiff is entitled to any relief consistent with the case made by the complaint and embraced within the issue, although not

the relief specifically demanded. *Leonard v. Rogan*, 20 Wis., 540; *Stroebe v. Fehl*, 22 id., 337; *Hopkins v. Gilman*, id., 476. This statutory rule, expressly governing in all ordinary actions, we extend to proceedings of this nature also, holding the appearance of the party adversely interested tantamount to an answer in other cases. Appearing and opposing the application, it must be presumed that such party denied the right of the petitioners to any kind of relief and upon any ground consistent with the facts stated in the petition and the proofs made at the hearing. If this view be correct, as we think it is, then it cannot with certainty be said that this court is adjudicating questions which were not raised or considered in the courts below, or that it is determining issues which were not there made, or upon which the respondent was not heard. The presumption must be that the court is not; but if it is, then it was the mistake or omission of the respondent not to have produced his evidence, if he had any, to meet and rebut the case made by the petitioners in any aspect of it which gave them a right to relief against him. In consideration of the rule that the court was not limited to granting or refusing the particular relief prayed, but might grant any other consistent with the case made by the petition and established by the proofs, it was the privilege of the respondent, and his duty if he would have the benefit of it, to have introduced his evidence; and he cannot now be permitted to say that he has had no opportunity to be heard or to make his defense. He has had the fullest opportunity for both purposes; and if the same has been unimproved or lost, it is not the fault of the law nor of this court in applying it. If, therefore, a party rests his defense upon a single ground, omitting others which he may have, he must see to it that such ground is decisive of the whole controversy in his favor; for if it is not, then, although he may prevail on that ground, still judgment may go against him on the others, which he has suffered to pass undefended.

In support of the objection that the proceeding is premature,

the argument is, that the proofs establish a mere constructive trust in favor of the petitioners as *cestui que trusts*, and against the respondent as trustee, in respect of which trust no right of action could accrue to the petitioners against the respondent until the respondent had denied the trust. It is furthermore argued that there can be no denial of the trust, so as to let the petitioners in to assert their rights in this proceeding or by a suit in equity, until the estate has been settled and the property has come to the hands of the respondent as residuary legatee under the written will. After these things have been done, but not till then, can the petitioners call upon the respondent to recognize the trust. When that time arrives, they can go to him and demand payment of the additional sums verbally given or bequeathed, and which he promised the testator to pay, and then, if he refuses payment, that will be a denial of the trust, for which a right of action will accrue; and the petitioners may sue to enforce the trust. Until that time has come, and these things have occurred, the petitioners have no cause of complaint. Such is the course which counsel for the respondent have marked out for the petitioners to pursue; and such, in brief, is their argument in support of this objection. There can be no doubt that such course might have been pursued by the petitioners if they had so chosen; but that it was their only course, and such their only remedy, we differ entirely with the learned counsel in opinion. We are of opinion that it was optional with the petitioners to call upon the respondent at once to recognize the trust, and that, not denying it, he should assent to a decree of the probate court affirming its existence and validity as part of the last will and testament of the decedent. If, on the other hand, he should refuse to recognize it and withhold his assent, proceedings might be instituted as was done here, at the instance of the *cestui que trusts*, and a decree obtained declaring the validity of the trust and giving effect to it, according to the intention of the testator, as part of the testamentary disposition made by him of his

property. The case of legacies given by parol under the peculiar circumstances disclosed by this record, seems to afford peculiar and strong grounds for the prompt and early establishment of the rights of the legatees. The estate may be a long time in process of settlement and distribution; the witnesses may die, or their memories fail them; and the residuary legatee may become insolvent, remove to parts unknown, or otherwise so embarrass and thwart the legatees by parol in pursuit of their legal rights, as to render the personal remedy against him worthless. It seems to this court, therefore, to be a most proper case for a proceeding in the probate court in the nature of a bill *quia timet*, to settle and determine in advance the rights of the legatees by parol, or *cestui que trusts*, as counsel see fit to name them. It appears to us to be a measure of precautionary justice eminently appropriate and necessary; and upon looking into the books it will be found that cases of legacies and personal annuities are those in which bills *quia timet* have been most frequently entertained in equity for the establishment and protection of the rights of legatees and annuitants, and to prevent anticipated wrongs or mischiefs, and not because an injury has already occurred which requires any compensation or other relief. 2 Story's Eq. Jur., §§ 843, 846; 1 id., §§ 603, 604.

If, therefore, the petitioners had asked the relief to which this court has held them to be entitled, no question could have arisen as to the propriety of such holding. But we have seen that it is immaterial that this particular relief was not asked, provided the case made by the petition and established by the proofs showed that the petitioners were entitled to it; and the respondent, by denying the right of the petitioners to any relief under the petition, has denied the trust. It may be said that the petitioners should have applied to the respondent to acknowledge their rights before filing the petition, and that such fact, with his refusal, should have been stated in the petition. It is obvious from the course since pursued by the re-

spondent, that such application made to him would have been useless; and in any view we think it was unnecessary for the petitioners to make it. It was their right to commence proceedings without, and then, if he admitted their claims, the proper decree could have been entered without costs or expenses to any one.

*By the Court.* —Motion for a rehearing denied.