NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-GATE.—June, 1887.

MATTER OF MINTURN.

*In the matter of the petition of* JOHN C. MINTURN, *a legatee under the will of* CORNELIA MINTURN, *deceased.*

The will of the testatrix, who died September 29th, 1882, gave her whole estate to her executors in trust, to pay the entire net income thereof to her brother J., during his natural life, with remainder over. In September, 1886, J. having presented a petition to the Surrogate's court setting forth that he had received from the trustees no income since November, 1885, and praying that accrued income in their hands be paid to him, it appeared that, among the effects of testatrix had been found an instrument of "agreement," under seal, signed by J., executed shortly after the execution of a codicil to the will, reciting the foregoing testamentary provision, and containing a covenant by J. that, after he should have received such income for three years, he would execute and deliver to the executors a release and discharge thereof for any future time. There was no direct evidence that testatrix had ever avowed an intention of altering her testamentary dispositions so as to limit J.'s interest in her posthumous estate to the three years in question. J. died before the matter was determined.—

*Held,* that decedent's possession of the instrument at her death was *prima facie* evidence of its delivery to her by J. in his lifetime; that, in the absence of evidence to the contrary, the agreement must be deemed to have been made in pursuance of an understanding, without which

decedent would have revoked her will, or so altered its provisions as to accomplish the result contemplated by the instrument in controversy; and that, the claim of J.'s executor must be denied.

PETITION by John C. Minturn, a beneficiary under decedent's will, praying for a decree requiring the executors to pay to him certain income alleged to be due and payable to him by the terms of that instrument.

HENRY THOMPSON, *for John Minturn, for the motion.*

HERBERT B. TURNER, *for executors.*

THE SURROGATE.—This testatrix died on September 29th, 1882, having theretofore made and executed two written instruments, which, in November of that year, were admitted to probate as together constituting her last will and testament. One of these instruments, the will proper, was executed on June 5th, 1880; the other, a codicil, on April 19th, 1882. By the eighth article of the earlier paper the decedent's entire estate is given to her executors, in trust " for these uses and purposes, viz.; to pay the entire net income thereof semi-annually to my brother John C. Minturn during his natural life, and, on the death of my said brother, to pay," etc., etc. Then follows a gift of legacies to relatives and friends of the testatrix and to certain religious and charitable institutions. The only substantial change effected by the codicil is the addition of the names of three persons to the list of the beneficiaries specified in the eighth article of the will.

On September 7th, 1886, John C. Minturn filed in this court a petition, wherein he alleged that since November, 1885, he had received from the trustees no income of the residuary estate. He prayed for an

order directing that such income as had accrued in their hands be paid to him, in accordance with the provisions of the will. To this petition the trustees interposed an answer. They admitted that they were in possession of accrued income, amounting to about $7,000, and proceeded to say that " as to whether the petitioner is entitled to receive such income, and as to whether there is any other person entitled to priority of payment of the same, these respondents submit to the judgment of the court, after due consideration of all the facts."

One of the facts above referred to is the following : Among the effects of the testatrix which came into the hands of her executors after her decease, was an instrument under seal bearing the signature of her brother John C. Minturn, and dated May 1st, 1882, just two weeks after the execution of the codicil to her will. The instrument is in these words :

" This agreement . . . . between John C. Minturn of the city of New York, party of the first part, and Cornelia Minturn of the same place, party of the second part: Whereas the party of the second part has heretofore made and published her last will and testament according to law, wherein and whereby she has, among other things, provided in substance that the income arising or to arise from her residuary estate should be paid to and received by the party of the first part during the term of his natural life, in case he should survive the party of the second part: Now, therefore, in consideration of the premises, and of the sum of one dollar to me in hand paid by the party of the second part, the receipt whereof is hereby acknowl-

edged, the party of the first part doth hereby covenant and agree that, after he shall have received from the executors of the will of the said party of the second part such income for the space of three years, he will execute and deliver, in due form of law, to the said executors, a release and discharge of the said income for any future time beyond the said three years."

The trustees asked the direction of the court as to whether, in view of the terms of the instrument above quoted, they would be justified in paying to the petitioner any portion of the income that had accrued since the expiration of the third year from the decedent's death.

Upon the suggestion of the Surrogate that all persons who might be affected by the decision of that question should be brought in as parties, and upon the discovery thereupon that the trustees were about to account, the consideration of Mr. Minturn's petition was postponed until such account should be filed. It was filed on October 5th, 1886. Five days later Mr. Minturn died. The representative of his estate now claims that, in the decree about to be entered in the accounting proceeding, provision should be made for the payment to himself of all the income of the estate up to October 10th, 1886.

It is insisted by counsel for the trustees that the agreement above set forth operated upon Mr. Minturn in his lifetime, and now operates upon the executor of his estate, as an equitable estoppel of the right of either to claim any portion of the income now in the trustee's hands. If the evidence establishes that,

prior to the date of the agreement, the testatrix had formed a purpose of cutting down the interest of her brother John in the income of her residuary estate, from an interest for life to an interest for three years, and that she was dissuaded from making a will or codicil for effecting that purpose, by John's promise and assurance that if she should suffer her testamentary dispositions to remain unchanged, he would surrender all claims to income accruing after the expiration of three years from her death, there can be no doubt that the application of John's representative must be denied.

In Chamberlaine v Chamberlaine (*Freem. Ch.*, 34 [1678]), a decedent had made a will whereby certain lands had been devised to his son and a pecuniary legacy had been bequeathed to his daughter. He resolved to alter his will and make these legacies a charge upon his lands, fearing that the personal assets of his estate might be insufficient for their satisfaction. Thereupon his son said that if no alteration should be made in the will, he would pay the legacies himself. The will was left unchanged at the testator's death. Held, that the son was bound to pay the legacies.

A testator made a will appointing his wife his executrix. He was induced to substitute his son in place of his wife, upon the son's promise to act as trustee for his mother's benefit. Held, that a trust which equity should enforce was fastened upon the son's conscience (Thynn v. Thynn, 1 *Vern.*, 296 [1684]).

A testator who had resolved to devise a part of his

estate to his godson was prevailed upon to devise it all to his wife, upon her promise to give the godson such portion as the testator had originally intended him to have. The wife was held bound to fulfil her promise (Devenish v. Baines, *Prec. in Ch.*, 3 [1689]).

A testator devised lands to his brother, who was named executor of his will, and directed the payment of an annuity to his nephew. He would have charged this annuity upon the real estate if the executor had not promised to pay it. Held, that it became a charge in the same manner as if the will had so ordered (Oldham v. Litchfield, 3 *Vern.*, 506 [1705]).

A testatrix who had made a will whereby she had bequeathed a bond to A., afterwards made another by which she bequeathed such bond to B., upon B.'s promise to give it, at her own death, to A. Held, that B.'s declarations after the execution of the second will were admissible to prove such promise, and that after B.'s death A. could recover the bond of B.'s representative (Drakeford v. Wilks, 3 *Atk.*, 539 [1747]).

A testator had left his will in the hands of A., his nephew, who was named therein as executor and residuary legatee. The testator having decided to reconsider its provisions and make a bequest of one hundred pounds to B., another nephew, A. declared that no such change need be made, as he would himself, at his uncle's death, pay B. the sum intended for him. The testator died, leaving his will as originally written. Held, that the executor was bound to pay B. one hundred pounds out of the residue (Reech v. Kennegal, 1 *Ves. Sen.*, 123 [1748]).

One who had made a will, giving legacies to his wife and sister, requested his executor, the residuary legatee, to see to it that those legacies were increased in a sum specified. The executor promised accordingly. The testator made no new will. Held, that a trust was thus created which equity could enforce (Barrow v. Greenough, 3 *Ves.*, 152 [1796]).

A. was about to make a will bequeathing a certain fund to B. C., who in the event of A.'s intestacy would take his estate, dissuaded A. from carrying out his intention, promising that in the event of his dying intestate, he (C.) would take the estate as B.'s trustee. Held that upon A.'s death the equitable ownership of his estate passed to B. (Williams v. Fish, 18 *N. Y.*, 546 [1859]). See also to similar effect: Stickland v. Aldridge, 9 *Ves.*, 516 [1804]; Mestaer v. Gillespie, 11 *Ves.*, 638 [1805]; Chamberlain v. Agar, 2 *Ves. & B.*, 259 [1813]; Owing's Case, 1 *Bland's Ch.*, 370 [1826]; Hoge v. Hoge, 1 *Watt's (Pa.)* 163 [1832]; Podmore v. Gunning, 7 *Sim.*, 644 [1836]; Jones v. McKee, 3 *Pa. St.*, 496 [1846]; Russell v. Jackson, 10 *Hare*, 204 [1852]; Walgrave v. Tebbs, 2 *K. & J.*, 318, 321 [1855]; Church v. Ruland, 64 *Pa. St.*, 432 [1870]; Brook v. Chappell, 34 *Wis.*, 405 [1874]; Dowd v. Tucker, 41 *Conn.*, 197 [1874]; Williams v. Vreeland, 32 *N. J. Eq.*, 135 [1880]; O'Hara v. Dudley, 95 *N. Y.*, 403 [1884].

Now there is nothing in the facts and circumstances of the case at bar calculated to take it out of the doctrine established in the cases above cited. To be sure there is here no direct evidence, such as was presented in many of those cases, of actual personal conference

between the decedent and the beneficiary who was declared a trustee *ex maleficio*, nor is it shown by direct evidence that this testatrix ever avowed an intention of so altering her testamentary dispositions as to limit her brother John's interest in her posthumous estate to the enjoyment of the income thereof for three years ; but in place of such evidence we have an instrument under seal whose probative force is quite as effective.

Miss Minturn's possession of that instrument at her death is *prima facie* evidence that it had been delivered to her by her brother John in his lifetime (Chandler v. Temple, 4 *Cush.*, 285; Carnes v. Platt, 41 *N. Y. Sup'r C.*, 435; Boody v. Davis, 20 *N. H.*, 140; Tunison v. Chamblin, 88 *Ill.*, 379, 387). The presumption that it was so delivered has not been overthrown, and, indeed, has been in no manner assailed.

The instrument bears the signature of John C. Minturn, and expressly recites that it is an *agreement* entered into between himself and this testatrix. In the absence of any evidence to the contrary, it is fair to conclude from this recital that Minturn's promise, which is here sought to be enforced, was not only made with the knowledge and approval of the testatrix, but was made in pursuance of an understanding, in the absence of which she would or might have revoked her will, or have supplemented it by a codicil which would have accomplished the very result contemplated by the instrument here in controversy.

The application of Mr. Minturn's executor must be denied.