In re Guardianship of Dejanovich: Dejanovich, Appellant, vs. Butter, Guardian, Respondent.

*April 3—April 30, 1935.*

For the appellant there was a brief by *Geo. C. Wheeler* of Mayville, and *A. W. Lueck* and *J. L. Skupniewitz* both of Beaver Dam, and oral argument by *Mr. Lueck*.

*John A. Thiel* of Mayville, for the respondent.

MARTIN, J. On August 10, 1934, the appellant filed a petition in the county court of Dodge county in which it is alleged that he is one of the persons named in the aforesaid guardianship; that he became twenty-one years of age on March 15, 1934; that letters of guardianship were issued by said county court in said guardianship matter to the respondent on or about November 22, 1919, and that ever since he has been acting as such guardian. Petitioner further alleges that he has been unable to get a final settlement with said guardian since he became of age.

On said petition the court entered an order dated August 10, 1934, directing said guardian to make and file a full and complete account of all his doings as such guardian. The respondent filed such account on September 13, 1934. This account shows receipts and disbursements covering the period from November 22, 1919, to December 31, 1933. According to this account the guardian had a balance on hand in the sum of $47.18. Upon objections being filed by the appellant to the allowance of said account, a hearing thereon was had in said county court on September 15, 1934.

The record shows that on December 27, 1918, one Anna Dejanovich, mother of the appellant, Nicholas Dejanovich, Mary Dejanovich, Joseph Dejanovich, and Josephine Dejanovich Mazar, the minor children of Emil Dejanovich, deceased, and said Anna Dejanovich, petitioned the county court of Dodge county praying for the appointment of one Steve Dejanovich as guardian of said minor children. In said petition it is stated "that said minor Nicholas Dejanovich has personal property of the value of about $800 and real estate to the value of about $660." On January 25, 1919, said court entered an order appointing Steve Dejanovich as guardian of said minors and directing the amount of bond to be furnished. Letters of guardianship were issued accordingly on February 4, 1919.

It appears that Steve Dejanovich tendered his resignation as such guardian in writing to said court on October 25, 1919. He also submitted therewith his account as such guardian. The account contains a single debit item as follows:

"Received insurance moneys solely for said Nicholas Dejanovich, minor $800.00. No receipts had on account of said Mary and Joseph Dejanovich, their estate consisting wholly of an interest in the homestead of the deceased, and now occupied by the widow and said minor heirs of said deceased. Total $800.00."

There are two items of credit amounting to $22, leaving a balance on hand on deposit in the State Bank of Mayville in the sum of $778. Upon order and notice, hearing was had on the final account of Steve Dejanovich as guardian on November 22, 1919. The final account was allowed, and said guardian and his surety were discharged from any and all further liability on account thereof.

It further appears that on October 24, 1919, said Anna Dejanovich, mother of said minors, petitioned the county court praying that William Butter (the respondent) be appointed as guardian of said minors. This petition recites:

"That said minors have personal property to the value of about $800.00 and real estate to the value of about $1,000.00."

On the petition respondent was appointed guardian of said minors on November 22, 1919, and letters of guardianship issued to him on said day at which time respondent received from said former guardian the sum of $778, and gave said former guardian a receipt therefor in the following language:

"I, William Butter of the city of Mayville, in said County, who has this day been ordered by said Court to be appointed as the Guardian of said Nicholas Dejanovich, Mary Dejanovich, and Joseph Dejanovich—minors, as the successor of

Steve Dejanovich, who has resigned his trust as the Guardian of said minors, do hereby acknowledge to have received from said Steve Dejanovich as such Guardian, the sum of seven hundred seventy-eight ($778.00) dollars, in manner following, to-wit:

Savings Account in the State Bank of Mayville. .$500.00
Certificate of Deposit State Bank of Mayville. . . . 100.00
Certificate of Deposit State Bank of Mayville. . . . 100.00
Certificate of Deposit State Bank of Mayville. . . . 78.00

Total. . . .$778.00

—which I now hold in trust for the said minors as aforesaid. "Dated this 22nd. day of November, 1919.
"WILLIAM BUTTER." [Signed]

It does not appear that the respondent guardian had any personal knowledge that the item of $778 which he received from the former guardian belonged solely to the minor Nicholas Dejanovich, appellant herein. From the petition of the mother of said minors praying for his appointment and in which it is recited, "that said minors have personal property to the value of about $800.00 and real estate to the value of about $1,000.00," and the receipt given to said former guardian which acknowledges receipt of the $778 and containing the following recital, "which I now hold in trust for the said minors as aforesaid," and in the absence of explanation to the contrary by the court, the attorneys, or the guardian *ad litem* in said proceedings, the respondent assumed that each of the minor children had an equal interest in the $778 turned over to him by said former guardian, and respondent, as guardian of said minors from 1919 until he filed his account with the court on September 13, 1934, treated the moneys received and disbursed as belonging equally to said minors.

At the hearing on respondent's account as guardian on September 15, 1934, the appellant, Nicholas Dejanovich, filed objections to said account in substance as follows: That each

and every item of disbursement was charged against the estate and property of appellant; that all of the income consisted of the insurance moneys in the sum of $800, all of which belonged to appellant personally, the further sum of $98.67 which represented appellant's equity received on the sale of real estate, and a further item of $39.16, received by the guardian in 1927, which represented wages earned by appellant.

It appears that in August, 1924, the homestead property was sold for $1,150, which amount respondent guardian received; at the time of said sale the homestead was subject to a mortgage with accrued interest amounting in all to $1,051.33. Total receipts covering the period from November 22, 1919, to December 31, 1933, including the $778 received from the former guardian and the $1,150 received from the sale of the homestead property are $2,033.50. The total disbursements covering the same period, including payment of the mortgage against the home property in the sum of $1,051.33, are $1,986.32, leaving a balance on hand in the sum of $47.18. The respondent's account as filed shows there were no disbursements since the year 1925. The respondent's account shows that from the time of his appointment as guardian until the sale of the homestead property he paid interest on the mortgage in the sum of $330. During the same period he paid taxes on the homestead property in the sum of $293.13 and paid for insurance on the house the sum of $15.85. Aside from the debit items mentioned, the balance of the receipts consisted of interest received on the bank deposits.

The county court found, in substance, that the money received by respondent guardian from the former guardian belonged to the several minors, and that same was spent for the benefit of the appellant and his minor brother and sisters, and to pay the taxes and interest to retain the home for the family. In other words, that the guardianship account as

filed is correct. An order was thereupon entered allowing the account as filed, and directing the guardian to pay to the appellant the balance on hand in the sum of $47.18.

The conclusion reached by the county court is not sustained by the record. The final account of Steve Dejanovich, the former guardian, which was duly allowed upon notice and order of the court, shows that the $800 which he received was insurance moneys belonging solely to the minor Nicholas Dejanovich. This account further shows that no receipts were had on account of Mary and Joseph Dejanovich; that their estate consisted wholly of their interest in the homestead property. The respondent was appointed guardian of the three minors, Nicholas, Mary, and Joseph Dejanovich, Josephine Dejanovich Mazar being married and living with her husband. The former guardian served in said capacity both as to the estates and as to the care, custody, and education of Nicholas, Mary, and Joseph, but only as to the estate of Josephine Dejanovich Mazar.

We must first consider the force and effect of the order of the county court on the hearing of the final account of Steve Dejanovich, the former guardian, entered on November 22, 1919. In *O'Connor v. Decker*, 95 Wis. 202, 204, 70 N. W. 286, the court said:

"No doubt, the direction of the county court upon the settlement of the accounts of the guardianship has the force and effect of a judgment, and is conclusive of the rights of the parties, for the judgment of a county court as to matters within its jurisdiction is as conclusive and final as the judgment of any other court." Citing *Barker v. Barker*, 14 Wis. *131, *147; *Brook v. Chappell*, 34 Wis. 405; *Appeal of Schæffner*, 41 Wis. 260.

Is the respondent guardian concluded by the judgment of the county court as entered on the hearing of the final account of the former guardian? Clearly the order and judgment of the county court determined the status as to the ownership of the $778 on hand. It was thereby determined

as belonging solely to the minor Nicholas Dejanovich. Respondent is the immediate successor to Steve Dejanovich as guardian. The respondent, by virtue of his appointment and letters of guardianship, succeeded by operation of law to the right of possession, control, and management of the property and estate of his wards as determined by the order and judgment discharging said former guardian. It will be assumed that he acted in good faith, believing that the moneys he received from the former guardian belonged in equal shares to his wards. It is unfortunate that through the many years he served as guardian in making his annual reports to the court as such guardian that his attention was not called to the fact that the moneys on hand belonged solely to his ward Nicholas Dejanovich. While in law he must bear the responsibility, he alone is not to blame.

The following facts are not in dispute: The item of $778 received by the respondent guardian on November 22, 1919, belongs solely to Nicholas Dejanovich, the appellant herein. The total amount of interest received on bank deposits is $66.34. There is an item of $39.16 which represents wages earned by appellant. The net equity realized from the sale of the homestead property, that is, after deducting the principal and accrued interest on the mortgage and the expense of sale, was $4.17, one-fourth of which belongs to appellant, making the total amount which the respondent guardian received belonging to appellant $884.54. The respondent has paid out for taxes on the homestead property during the years covered by his account $293.13, and the further sum of $15.85 for insurance on the house. Respondent is entitled to credit for one-fourth of these two items, or $77.24. Under the statute, sec. 74.06, respondent could have paid the tax on the undivided interest of Nicholas Dejanovich in the homestead property. He had no authority to use the moneys belonging to Nicholas to pay the tax on the undivided interests of the other three minors. It further appears that the

respondent disbursed the sum of $50 for clothing for Nicholas, Mary, and Joseph, the articles purchased for each representing approximately the same amount, or $16.66.

During the period from the time of his appointment until the sale of the homestead, respondent paid out for interest on the mortgage against the home property the sum of $330. It appears that in the father's estate the homestead in 1919 was appraised at $2,600. All assumed that there was a substantial equity in the homestead property over the incumbrance. It was the duty of the respondent as guardian to protect the home against foreclosure of the mortgage, not alone to protect the interest of Nicholas, but also to provide a home for the other three minors, and for their mother, until her remarriage, which took place some time in the year 1922, the exact date not appearing in the record. Respondent is entitled to credit for the total amount of interest paid on the mortgage against the homestead.

*By the Court.*—Order reversed, and record remanded for further proceedings in accord with the opinion.