Wis.]                    AUGUST TERM, 1891.                    469

Second National Bank of St. Paul vs. Larson.

SECOND NATIONAL BANK OF ST. PAUL, Appellant, vs. LARSON, Respondent.

*October 22 — November 17, 1891.*

(*1, 6*) *Appeal: Review of evidence: Orders after judgment.* (*2, 3*) *Contracts: Unauthorized rescission by agent: Assignment of claim for damages.* (*4*) *Settlement: Fraud.* (*5*) *Interest: Instructions: Waiver of error.*

1. Where the trial court refused to direct a verdict, and an exception to such refusal was duly taken, this court will review the evidence, although there was no motion for a new trial before judgment.
2. One L. contracted to sell lumber to a firm at a stipulated price. Afterwards S., his general agent, on account of personal differences with the firm, refused to ship any more lumber on said contract. About a week later, and as soon as he learned what S. had done, L. offered to go on and fulfil the contract, but the firm refused to accept any more lumber under it, and L. was damaged by the loss of the contract. His claim against S. for such loss, by reason of the unauthorized rescission of the contract, he assigned to the defendant before this action was commenced. The action is upon a note made by the defendant to the order of S. and transferred to the plaintiff bank after maturity. The defendant pleaded as a counterclaim the said claim against S., which had been assigned to him by L. The damage to L. by reason of the loss of the contract exceeded the amount unpaid on the note in suit. *Held,* that upon a special verdict finding the above facts a judgment for the defendant was properly entered.
3. The contract was rescinded by S. and not by the vendees of the lumber, and L. was bound by such rescission.
4. A writing signed by S. and L., purporting to be a mutual settlement of all demands, was put in evidence by the plaintiff. There was testimony tending to show that L. had signed it without reading it, on the faith of representations by S. that it was of an entirely different character. The jury having found specially that L. and S. did not settle the claim in question, the significance of such finding, under the charge of the court, is that such testimony was true.
5. The trial court instructed the jury to allow interest on the damages from the time they accrued. This charge was not excepted to, and plaintiff acquiesced in the ruling by admitting that the damages ex-

ceeded the sum unpaid on the note, which could only be true by al-
lowing such interest. *Held*, that the error, if any, in the charge
would not work a reversal.

6. On an appeal from a judgment, orders made in the cause after judg-
ment cannot be reviewed.

APPEAL from the Circuit Court for *Barron* County.

This action was brought to recover the amount due on a
certain promissory note dáted September 4, 1884, made by
the defendant *Ole Larson* and Berta, his wife, for $4,000,
and ten per cent. interest, payable to the order of Thomas
P. Stone, and due September 4, 1887. The interest on the
note was paid to the date last mentioned. The note was
indorsed and transferred by the payee to the plaintiff after
it became due. The action was originally brought against
Mrs. Larson also, but was discontinued as to her on the trial.
The making of the note and the amount unpaid thereon is
admitted in the answer.

The defendant interposed a counterclaim for damages
against Thomas P. Stone, the payee named in the note,
which it is alleged accrued to one L. O. Larson, which claim
was assigned to the defendant before this action was com-
menced. The facts out of which such claim for damages
arose are briefly as follows: L. O. Larson owned and
operated a saw-mill at Granite Lake, in Barron county.
Thomas P. Stone was his general agent in operating such
mill. In April, 1883, L. O. Larson contracted with a firm
in Minneapolis — Nevitt, Clendenin & McGuire — to sell to
such firm the entire cut of his mill of pine logs during the
then current season, at a stipulated price per thousand feet
of the different grades, to be delivered free on board the
cars for shipment to the purchaser as it should direct.
Stone had a contract with the same firm for the sale to it
of certain lumber belonging to him, in which Larson had
no interest. Differences arose between Stone and the firm
concerning said last-mentioned lumber, and the firm refused

to accept Stone's draft for certain lumber shipped under the contract. Thereupon Stone, in the absence of L. O. Larson, refused to ship any more lumber on Larson's contract. About a week later, and as soon as he learned what Stone had done, L. O. Larson offered to go on and fulfil the contract, but the firm refused to accept any more lumber under it. The market price of lumber having greatly fallen after the contract was made, Larson was obliged to sell the lumber included in the contract with the Minneapolis firm, and not delivered, for $3,500 less than the contract price therefor with that firm. Larson thereupon claimed that Stone was liable to him for such loss by reason of his unauthorized rescission of Larson's contract with the Minneapolis firm, and he assigned such claim to the defendant.

The plaintiff replied to such counterclaim: (1) A general denial; (2) an accord and satisfaction of such claim between L. O. Larson and Stone before the same was assigned to defendant; and (3) that both L. O. Larson and the defendant represented to the agents of the plaintiff, before the plaintiff purchased the note, and when it was negotiating with Stone for the purchase thereof, that there was no offset or counterclaim against it, and stated that the note would be paid within a short time.

The jury before whom the case was tried found specially (1) that Stone, while in the employ of L. O. Larson, but without his knowledge, consent, or authority, stopped the shipment of lumber on Larson's contract with the Minneapolis firm; (2) that within a few days thereafter, and as soon as he was informed what Stone had done, L. O. Larson repudiated his act, and offered the firm to ship the lumber according to the contract; (3) that the firm refused to receive the lumber because Stone had thus stopped the shipment thereof; (4) that Larson was damaged by the loss of his contract in the sum of $5,269; (5) that L. O. Larson and Stone did not settle the claim for such damages;

(6) that plaintiff did not purchase such note relying on any statement of defendant that there was no defense against it, and did not give additional time to pay the same; and (7) that before taking the note from Stone the plaintiff, through its agent, was not informed by L. O. Larson that the note was all right.

It was admitted on the trial, on behalf of the plaintiff, that the claim for damages exceeded the amount unpaid on the note in suit. Thereupon judgment was ordered and entered for the defendant dismissing the complaint, with costs. The plaintiff appeals from the judgment.

For the appellant there was a brief by *Jenkins & Jenkins, Charles J. Berryhill,* and *Charles Davison,* and oral argument by *Mr. Berryhill.*

*James Wickham,* for the respondent.

LYON, J. 1. The record fails to show that any motion for a new trial was made before judgment. Counsel for defendant maintains that, because such motion was not made, this court cannot review the testimony. As a general rule of practice, this is a correct proposition. But here the plaintiff moved the court at the close of the defendant's testimony, and again at the close of the trial, to direct the jury to return a verdict for the plaintiff for the amount unpaid on the note in suit, because of the alleged failure of the defendant to prove his counterclaim. The exception to the refusal of the court to give such direction takes the case out of the general rule above stated, and requires this court to review the testimony in order to determine whether the motion should have been granted.

2. The learned counsel for the plaintiff maintained at considerable length in his argument, and cited many cases in support of his contention, that, although Stone wrongfully stopped the shipment of lumber on Larson's contract with the Minneapolis firm, yet because the contract

was partly performed, and the firm did not offer to return what it had received under it, it was not competent for the firm to rescind it. We need not pass upon this proposition, for the reason that the contract in the first instance was rescinded by Stone, acting for L. O. Larson. All that the firm did was to acquiesce in such rescission, and to persist in such acquiescence (as it lawfully might) when Larson desired them to go on with the contract. Stone was the general agent of L. O. Larson, and doubtless the rescission by him bound his principal.

3. A writing signed by Stone and L. O. Larson, purporting on its face to be a compromise and settlement of all demands and claims held by either against the other, was put in evidence by the plaintiff. The testimony concerning this instrument is conflicting, but it tends to show that Larson signed it without reading it, on the faith of false and fraudulent representations made to him by Stone to the effect that it was an instrument of an entirely different character, and that in fact no compromise including such claim was ever entered into between them. Under the charge of the court, it is obvious that the significance of the fifth finding is that such testimony was true.

4. It was undisputed that the plaintiff bank took the note in suit after the same became due by its terms, and that the claim of L. O. Larson against Stone for damages was assigned to the defendant before this action was commenced. The testimony has been examined, and we find that it supports each controverted finding of fact in the special verdict. That those findings and the undisputed facts amply support the judgment there can be no doubt.

5. The court instructed the jury to allow interest on damages from the time they accrued, which was in 1883. It is claimed that this is error. We do not determine whether it is erroneous or not, for the reason that the charge was not excepted to, and counsel for plaintiff acquiesced in

the ruling by admitting that such damages exceeded the sum unpaid on the note. This could only be true by allowing interest on the damages.

6. It seems that a motion for new trial for newly discovered testimony was made a term subsequent to that at which the judgment was rendered. The affidavits and proofs upon which such motion was founded are printed in the case, and error is assigned upon the refusal of the court to grant the motion. We cannot review such ruling upon this appeal, which is from the judgment. No rule of practice is more firmly established in this court than is the rule that, on an appeal from a judgment, orders made in the cause after judgment cannot be reviewed. *Leary v. Leary*, 68 Wis. 662, and cases cited in the opinion by Mr. Justice TAYLOR.

We find in this record no error which will justify the court in disturbing the judgment.

*By the Court.*— Judgment affirmed.