Richter vs. Estate of Leiby.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

---

RICHTER, County Judge, Appellant, vs. ESTATE OF LEIBY, Respondent.

*November 29 — December 16, 1898.*

(1) *Appeal: Review: Motion for new trial.*  (2, 3) *County courts: Jurisdiction: Discharge of sureties.*

1. Error in directing a verdict may be considered on appeal, though there was no motion to set aside the verdict and grant a new trial.
2. In an action against a surety upon the bond of a testamentary trustee, a recital in the certificate of probate of the will that the court proceeded "pursuant to notice duly published," together with the facts that the trustee accepted the appointment, and that the

surety, by executing the bond, recognized the jurisdiction of the probate court, is sufficient to establish such jurisdiction, in the absence of evidence to the contrary.

3. In absence of express statute (such as now exists in sec. 4281b, Stats. 1898), county courts have no power, either by taking a new bond or otherwise, to discharge sureties from liability for either past or prospective misconduct of an executor, administrator, or trustee; and a new bond, if taken, is merely cumulative.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Suit by the county judge for the beneficiaries against the estate of Jonathan Leiby as surety upon the bond of W. H. H. Wroe, as testamentary trustee under the will of John S. Emerson, deceased, the beneficiaries of the trust being the widow and minor child of said Emerson.

Wroe was appointed testamentary trustee in 1887, and under the order of the court gave bond in the sum of $15,000, with Elias Rhodes and Jonathan Leiby as sureties, and received the trust fund, amounting to about $7,500. On filing his annual account on June 7, 1890, said trustee informed the county court that the balance of the trust fund in his hands was $7,318.19, loaned on good security at six per cent. per annum, and that Elias Rhodes, one of the sureties upon his official bond, was dead. Thereupon, on June 10th, the county court entered an order " that the said trustee furnish within ten days a new bond in the sum of $15,000, with two sureties, each of whom shall justify in the sum of $7,500." On June 30th the trustee filed a new bond in accordance with said order, with Henry De Long and Samuel F. Rhodes as sureties, which bond was duly approved and filed. No suspicion then existed as to the management of the estate by Wroe, who filed annual accounts showing the principal substantially unimpaired. Leiby, the surviving surety on the first bond, died intestate July 7, 1894.

In the early part of 1895 the trustee, Wroe, being called on to account, submitted to the county court of Fond du

Lac county a sworn statement showing embezzlement of the entire estate, and an indebtedness from himself of $7,318.19, with interest from June 13, 1892, less a credit of $170.25 paid out for the estate, and tendered his resignation, which was accepted, and M. T. Simmons appointed in his place. Said Wroe was thereupon ordered to pay over to said successor the amount then due, of $8,412.75, with interest from April 30, 1895, within twenty days from date of the order, June 17, 1895, which said Wroe failed to do; and thereafter, upon an order authorizing him so to do, the new trustee, Simmons, filed a claim against the estate of Jonathan Leiby, deceased, for said sum, which claim was allowed by the county court at the sum of $9,258. The administrator of Leiby's estate then appealed to the circuit court, where a trial was had by the court and jury, and a judgment dismissing the claim was entered upon a verdict directed by the court; both plaintiff and defendant moving the court to direct a verdict in their favor, respectively.

The defendant claims that the new bond given June 30, 1890, was in substitution for the old bond, and relieved the sureties to the latter from any liability for acts subsequent thereto. The plaintiff contends that it had no such effect, but was merely additional security, leaving the old bond in full force.

*D. D. Sutherland*, for the appellant.

For the respondent there was a brief by *Lyman E. Barnes*, *F. W. Harriman*, and *John Bottensek*, and oral argument by *Lyman E. Barnes*. They argued, among other things, that the supreme court could not properly review the evidence because there had been no motion for a new trial. *Anstedt v. Bentley*, 61 Wis. 629; *Reed v. Madison*, 85 id. 667; *Shores L. Co. v. Starke*, 100 id. 498. The jurisdiction of the county court of Fond du Lac county to grant probate in the estate in which the bond of the trustee was given was not proved. Neither the petition nor notice to admit the will to probate

was shown. They were essential to the jurisdiction. *Heminway v. Reynolds*, 98 Wis. 501; *Pryor v. Downey*, 50 Cal. 388; *Burris v. Kennedy*, 108 id. 331. It is only when the whole record is introduced in evidence that liberal presumptions can be invoked to aid it. *Haynes v. Cowen*, 15 Kan. 637, 640–642. The second bond which the trustee was required to give and did give was a *new bond*. There is a clear distinction between a new bond and an "additional or further bond." There was no misconduct or reason for requiring additional security, but it was the plain intention of all parties that the bond so ordered should be a new bond in fact. Such a bond would operate *prima facie* to extinguish the old bond. *International Bank v. Poppers*, 105 Ill. 491; *Davenport v. Schram*, 9 Wis. 119; *Schierl v. Baumel*, 75 id. 69; *Challoner v. Boyington*, 83 id. 399; *S. C.* 91 id. 27.

Dodge, J. In the view we have taken of this case, it will be unnecessary to consider any except the third of the assignments of error, which is that the court erred in directing the jury to find a verdict in favor of the defendant.

The respondent first objects that this error cannot be considered in the absence of a motion to set aside the verdict and grant a new trial. This objection is disposed of adversely to him by the opinion in *Plankinton v. Gorman*, 93 Wis. 560.

He next objects to a reversal on this ground, for the reason that jurisdiction in the county court, either to appoint the trustee or to pass upon his account, is not shown to exist. The evidence upon that subject consisted of the testimony of the county judge, who testified that he had the records in the matter of the estate of J. S. Emerson with him; and thereupon numerous individual papers were offered and received in evidence, including the will of Emerson, with the certificate of probate, the final order of distribution, awarding the fund to S. R. Emerson, the first trustee, and the order appointing Wroe trustee upon the death of said S. R. Emerson, besides

Richter vs. Estate of Leiby.

other papers,— not, however, including either the petition for probate, order of notice, or proof of notice thereon. The defendant objected to each of these papers, but in his cross-examination did not call for any other of the papers or records in said matter. If the entire record were before us, disclosing what, if any, steps by petition and notice were had to confer jurisdiction upon the county court, we might properly pass upon them, and decide the question of jurisdiction. The recitation, however, in the certificate of probate, that the court proceeded "pursuant to notice duly published," supplemented by the fact that Wroe accepted appointment as trustee, and that the defendant's decedent, by executing the bond, recognized the jurisdiction of the court, we think suffices to support the burden of proof on the question of jurisdiction, in the absence of any evidence to throw doubt upon it, although the better practice would have been to have introduced the whole record of the proceedings in county court. *Frederick v. Pacquette,* 19 Wis. 541; *Chase v. Ross,* 36 Wis. 267, 272; *Oakes v. Estate of Buckley,* 49 Wis. 592, 599; *Heminway v. Reynolds,* 98 Wis. 501.

The vital and important question in this case is whether by the giving of the new bond in 1890 the sureties upon the old bond were released from responsibility as to subsequent acts of the trustee. Unlike many states, Wisconsin in 1890 had no statute expressly authorizing the county court to release the sureties upon the bond of administrator, executor, or trustee. The respondent, however, contends that such power is inherent in the county court, as a court of general equity powers, within the scope of its jurisdiction.

The courts of many of the states — indeed, most which have spoken on the subject — have, some specifically and some only generally, expressed opinions against such power. Most of their decisions will be found cited by the text writers hereafter mentioned. The following are worthy of special consideration:

In *Comm. v. Rogers*, 53 Pa. St. 470, the existence of any such inherent power in the court is denied, the court saying at page 474: "When the bond was given and approved, the power of the court over it ceased. It is not, as was thought by the court below, implied in the power to compel an executor to give a bond, that the court can release it after it is given."

In *Wood v. Williams*, 61 Mo. 63, the executor, for the express purpose of releasing sureties, but without any order of the court, gave a new bond, which was received and approved by the court. The court held that, except in pursuance of a statute which exists in that state, the court had no power to release sureties on a bond, and that the sureties in question were not released, because the method prescribed by the statute had not been followed.

In *Bellinger v. Thompson*, 26 Oreg. 320, the court say: "The power of the county court to relieve a surety on an administrator's or executor's bond from liability is purely statutory. After a bond has been given, the heir, legatee, or creditor of an estate acquires and has a vested interest in it, and the power of the county court over it ceases, except in a proceeding authorized by law. . . . The authorities show that it does not follow that, because a county court has power to compel an executor or administrator to give a bond, it also has power to cancel it and substitute another in its place. After the bond has been given, the power of the county court over it ceases; and the heirs, legatees, or creditors for whose security it is given have a vested interest therein, of which they can be deprived only by some proceeding known to the law. . . . A rule permitting a county court on its own motion, and not in the manner provided by statute, to at will relieve a surety on an executor's bond from liability, would tend greatly to the insecurity of estates, and might in some instances permit the substitution of insolvent sureties for solvent ones. We are clearly of the opinion, there-

Richter vs. Estate of Leiby.

fore, that the order of the county court attempting to relieve Thompson and Dekum from liability on their bond was wholly and entirely void, and the Spaulding bond, not having been given in conformity with the provisions of any statute, and being simply a voluntary bond, had the effect only of adding new or additional security for the faithful performance of Ingalls' duties as executor."

The view generally adopted by the text writers is in accordance with these authorities,— that probate courts have not power to release or modify the liability assumed by sureties upon bonds, unless such authority is expressly conferred by statute. Schouler, Ex'rs, § 147; Brandt, Suretyship & G. § 540; Woerner, Guardianship, § 43; Woerner, Administration, §§ 142, 255.

On the other hand, neither industry of counsel nor our own research has discovered a single decision sustaining the power contended for, in the absence of statutory authority. The case of *International Bank v. Poppers*, 105 Ill. 491, is pressed upon our attention with much earnestness, but that case merely construes the Illinois statute authorizing the taking of new bonds in certain appellate proceedings as relieving from further liability sureties on a former bond. It is some authority to support a contention that the language used by the county court of Fond du Lac county would indicate an intention that the "new bond" should be in substitution for the old, and relieve the sureties on the latter from further liability, if that court had the power so to do. That case, however, does not hold that any such power is inherent in courts.

The question before us is new in Wisconsin, and conclusions reached by other courts, while valuable assistance to us, are not controlling. We are, however, not wholly without intimations in previous decisions of this court as to the general powers of our county courts, which may aid us. In *Crawford Co. v. Le Clerc*, 3 Pin. 325, it was said: " Courts of lim-

ited jurisdiction, like our county courts, being mere creatures of the statute, have no powers except such as are derived from the statute, and it must appear upon the face of their proceedings that they acted within the powers granted." The court in that case held that, while the circuit court would have inherent power to appoint interpreters in aid of business, the county courts, in the absence of statutory authority, had no such power. In the case of *Sitzman v. Pacquette*, 13 Wis. 291, it was decided that the county court had no inherent power to accept the voluntary resignation of an administrator.

Again, it is to be noted that in the statute of 1849 (now sec. 3967, Stats. 1898), from which date the general powers of our county court, it was deemed necessary to legislate expressly that under certain circumstances the sureties upon a guardian's bond might be discharged; a wholly unnecessary piece of legislation, if that authority had already been conferred by implication from the general grant of power; significant, however, of the understanding of this creative legislature that the power to terminate liability of sureties upon bonds taken by the county court was not otherwise conferred. Other provisions of that early statute indicate how limited was understood to be the authority conferred on county courts by what is now sec. 2443, Stats. 1898, necessitating the express conferring of such powers as those specified in what are now secs. 2446, 2461. Certainly the power to appoint an interpreter to facilitate the conduct of its business, or the power to accept the resignation of one of its own officers,— as an administrator,— is much more likely to be within the inherent administrative powers of the county court than the act of releasing sureties to a bond upon the substitution of others. The argument against the last-mentioned power is much the stronger, for others than the court, namely, the heirs, legatees, creditors, or *cestuis que truslent*, acquire personal and vested contract rights and interests in

the bond, of which they should not be deprived by any discretionary act of the court unless the authority therefor is clear.

Viewing the question independently of authority, we must bear in mind that the character of the persons to be protected by bonds taken in probate courts is, in general, such as to invite the special care of the legislature. In many, perhaps in most, cases, they are minor children, widows, or other relatives, who, by reason of some degree of incapacity to manage property, have been made beneficiaries of some trust; indeed, in many cases they are persons not yet in being. Even if not thus incapable, they are by the very situation deprived of voice or direction in the management of the property, with no right save to criticise when the time for settlement comes,— perhaps long after the acts complained of. For these classes of people the law has always had most anxious care. Considerations of convenience, almost of justice, for those placed in charge of their interests have always been subordinated to regard for the full protection of these helpless ones. That protection is diminished if the discretionary power contended for exists. Every change of security involves some uncertainty and risk. No human precaution can always prevent irresponsible sureties being accepted, and the means at command of our county courts to guard against such perils are none too ample.

Of course, such considerations as these must yield, if the power to cancel a bond and substitute a new one were essential to the exercise of the jurisdiction imposed on county courts. *Brook v. Chappell*, 34 Wis. 405. But no such necessity seems to us to exist. The power to remove executors, administrators, and trustees for causes satisfying the judgment of those courts, including insufficiency of security as one of those causes, accompanied by the power to accept additional and cumulative security, is certainly sufficient to enable the court to enforce proper administration by such

Richter vs. Estate of Leiby.

officers of their duties, and to protect the estate in their hands. The exercise of their jurisdiction by our county courts for now half a century, without the power contended for, negatives its essentiality. That experience seems to have been anticipated in England, for apparently their courts of probate in 1866 were without precedent for the discharge of one set of sureties upon the offer of others. *In re Stark*, L. R. 1 Prob. & Div. 76. The hardship to the sureties themselves, if that were to have weight, is not severe; for whenever their principal would be able and willing to furnish substitutionary security to exonerate them, he ordinarily would as readily furnish them that same security by way of indemnity. If not, and if his conduct be such as to justify alarm, they can invoke the powers of the county court to remove their principal, and so terminate liability.

Upon reason, therefore, as well as in concurrence with the holding of other courts, and in compliance with what seem to us plain intimations from the legislative enactments and from the prior decisions of this court, we are constrained to hold that county courts, in absence of express statute (as now exists in sec. 4281*b*, Stats. 1898), have no power, either by taking a new bond or otherwise, to discharge sureties from liability for either past or prospective misconduct of an executor, administrator, or trustee, and that the taking of the new bond in this case in 1890 did not release or discharge the defendant's decedent, but that such new bond was and is merely cumulative.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.