MAYHEW, Respondent, vs. WISCONSIN ZINC COMPANY, Appellant.

*May 1—October 6, 1914.*

*Master and servant: Injury: Unsafe working place: Duty of master: Guard for belt: Sufficiency: Questions for jury: Instructions: Evidence: Opinion as to ultimate fact: Proximate cause: Contributory negligence: Excessive damages.*

1. Under secs. 1636j, 2394—41, 2394—48, 2394—49, Stats. 1911, a master is required to furnish a place of employment as free from danger as the nature of the employment will reasonably permit.

2. Whether or not an open railing constructed of 2 x 4 timbers, provided as a guard for a twenty-two inch belt which operated an electric generator and traveled at a speed of between 720 and 900 revolutions per minute, was adequate to constitute a compliance with this duty of the master, was peculiarly a question of fact for the jury to determine upon the evidence.

3. An instruction that under the statute the master was not bound to anticipate every possible danger to an employee from machinery and that it was not required to guard or fence the belt in any particular manner or way or compelled to inclose the same by boxing it in, but that it was required to guard or fence the belt so as to be in fact securely guarded or fenced, stated the measure of the master's duty in as favorable a light as the statute will reasonably permit.

4. In view of such instruction, the admission of testimony that the belt in question could have been guarded by boxing was not prejudicial.

5. In determining whether the master's failure to safely guard the belt was the proximate cause of plaintiff's injury the jury were not bound to accept plaintiff's own explanation as to what caused him to fall over the railing and thus come in contact with the running belt and pulley, but might answer that question from the other evidence in the case.

6. A hypothetical question to an expert calling for his opinion as to whether it was physically possible for plaintiff's arm to be caught by the belt in such a manner as to carry him over the railing, embraced an ultimate question of fact to be resolved by the jury, and was properly excluded by the court.

7. The evidence in this case is *held* sufficient to justify the jury in

finding that the belt and pulley were not securely guarded; that the failure to so guard was the proximate cause of plaintiff's injury; and that he was free from contributory negligence.

8. Where as the result of defendant's negligence plaintiff's arm was torn off at the shoulder, an award of $12,500 was not excessive.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge.  *Affirmed.*

An action for personal injuries sustained by the plaintiff while working for the defendant as engineer in its mining plant.

The defendant, the *Wisconsin Zinc Company,* operated, among other plants, one at Platteville known as the Empire plant.  It had not elected to pay compensation under the Workmen's Compensation Act.  The power for the plant was supplied by electrical current from without the plant to a 100 horse power motor situated in the east end of the engine room and about twenty-seven inches from the south wall. The engine room was 38.3 feet long, running east and west, and seventeen feet wide north and south.  It contained besides the motor above mentioned a generator, mill motor, compressor motor, steam engine, switchboards, and other articles. The large induction motor was connected to a generator some nineteen feet further east by a large belt of double sole leather one and one-half inches thick and about twenty-two inches wide, built of splices about four feet long.  Contact with this belt, it is claimed, caused the injury.  The upper half of the belt traveled west and the lower half east.  The belt pulley situated on the north side of the motor was eighteen inches in diameter, with a twenty-two and one-half inch face, and the bottom of the pulley was sixteen inches from the floor.  The generator pulley was situated on the south side and was nineteen and one-half inches in diameter, twenty-two and one-half inch face, and its bottom was thirty inches from the floor.  The belt traveled at the very high rate of speed of between 720 and

900 revolutions per minute, depending on the load thrown upon it. Along the south side of the belt and beginning about three feet east of the motor base there was erected a railing constructed of 2 x 4 timber by nailing 2 x 4 posts to the floor and a 2 x 4 along the top of these posts. The first post was located three feet east of the motor, the second about midway between the motor and generator, and the third south of the generator. There was an open railing set about fifteen and one-half inches from the belt at the west end and about five inches from it at the east end. The railing was three and one-half feet high, and the belt ran at an angle with the top of the railing, being at the west post, or the one nearest the motor, about six inches below the top of the railing, and at the east post, or nearest the generator, about seven inches above the railing. Allowing for only a slight sag in the belt, the point where it would be the lowest would be near the west post. The distance between the upper and lower parts of the belt would vary slightly and be about eighteen inches over most of its length. The plaintiff testifies that the lower half of the belt at the place where he stood was about twenty-four inches below the top of the railing.

This belt conveyed the power to the generator, which supplied power throughout the entire plant and the mines below for all purposes power was needed. It was kept running night and day except about a twenty-minute stop on Sunday for oiling up the motor and generator and occasionally when the power from without gave out. The defendant company supplied a substance called "belt-cling" which was used when the belts slipped and was supposed to be applied warm. This belt being never at rest except for a few moments, the belt-cling was applied cold with a stick while the belt was running. A half-gallon bucket containing this belt-cling was furnished to the engineers and the plaintiff was instructed to put it on this belt whenever it slipped. On the morning of October 8,

1912, the plaintiff came to work about 7 o'clock, and within a few minutes noticed that this belt was slipping and proceeded to apply the belt-cling. He testified that he is five feet eleven and one-half inches in height; that he stood about six feet east of the motor and outside of the railing; that he reached over the forty-one inch high railing, having a stick dipped in belt-cling in his right hand, and proceeded to apply it to the upper surface of the lower half of the belt, reaching down nearly twenty-four inches so as to hold the stick flat to apply the belt-cling; that he felt a jerk on his arm, was carried over the guard rail, falling over it toward the belt and in contact with it, and the next thing he remembered he was in the hospital. His body was found about six feet northwest of the motor. His arm, torn off at the shoulder, was lying under the belt five or six feet east of the motor. It was manifest that he had been caught between the belt and the pulley on the motor and his arm torn from his body, which had been thrown over the motor, lying on the floor to the west. The arm below the elbow had a piece of skin torn off, but the hand and lower arm were not crushed or injured. The stick, about eight inches long, was found flattened and bent and lay just east of the pulley and bore evidence of having passed between the belt and the pulley. No one saw the accident.

The plaintiff's injuries showed that the principal muscles were all torn out next the sternum; that the collar bone was pulled out, right at the breast bone; the shoulder blade was pulled loose. All of the muscles that come from the back and run over and attach to the anterior part of the arm, the humerus, all of the pectoral muscles, torn across, so that there was nothing over the rib except some blood vessels and nerves.

The plaintiff was immediately taken to the hospital and operated upon. Salt solution was forced into his veins for hours to keep him alive, and for a week or more after he was partly under the influence of opiates. The doctors testified

that the shock to the system was severe, and it is clear from the evidence that his injuries were most serious and are permanent in their nature.

Upon October 11th Loveland, a man connected with the company, went to see the plaintiff in the hospital and stated that the plaintiff told him that he was applying belt-cling to the belt; that the stick got caught between the belt and the pulley before he could draw his hand away. The plaintiff denies such statement. The doctor and nurse testify that the plaintiff at this time had not recovered from the shock of the injury and was still in great pain and under the influence of strong opiates.

The defendant contends that the evidence is too indefinite and uncertain to warrant the jury in finding that the belt was not sufficiently guarded and that this was the proximate cause of the injuries, and that the plaintiff was standing close to the motor while applying the belt dressing, and that he was guilty of contributory negligence as a matter of law. The jury returned a special verdict as follows:

"(1) Did the plaintiff on October 8, 1912, receive an injury while in defendant's employ, resulting in the loss of his right arm? A. (by the court). Yes.

"(2) Was the plaintiff injured by reason of a pure accident and without negligence on the part of any one? A. No.

"(3) Was the plaintiff injured by his right arm being caught by a flap or flaps on the top side of the upper half of the generator belt, and the plaintiff carried over the guard rail while standing outside the guard rail south of said belt and about six feet east of the induction motor? A. No.

"(4) . . .

"(5) . . .

"(6) Was the plaintiff injured by his right arm being drawn in between the pulley and the belt of the induction motor while applying cling-surface to said belt and while standing at or near said motor? A. No.

"(7) Was the belt in question so located as to be dangerous to employees of the defendant in the discharge of their duty? A. Yes.

"(8) Was the belt in question securely guarded or fenced? *A.* No.

"(9) Was the failure to securely guard or fence said belt the proximate cause of the accident? *A.* Yes.

"(10) Was there on the part of the plaintiff any want of ordinary care which contributed to his injury? *A.* No.

"(11) If the court is of the opinion that the plaintiff is entitled to judgment, at what sum do you assess his damages? *A.* $12,500."

The court denied defendant's motion to change the answers of the jury to certain questions and a motion for a new trial, and awarded judgment in the plaintiff's favor for the damages in the amount named by the jury and for his costs. This is an appeal from such judgment.

For the appellant there were briefs by *Williams & Stern,* attorneys, and *Kopp & Brunckhorst,* of counsel, and oral argument by *Burdette Williams* and *B. K. Kopp.*

For the respondent there was a brief signed by *Brown, Brennan & Carthew,* attorneys, and *R. A. Goodell,* and oral argument by *Mr. Goodell* and *Mr. H. E. Carthew.*

The following opinion was filed June 17, 1914:

SIEBECKER, J. The defendant contends upon the facts shown that the plaintiff has not established a right to recover damages to compensate him for injuries he suffered, upon the grounds, first, that the evidence adduced wholly fails to show that defendant was guilty of any negligence which proximately caused the accident, and secondly, that if such negligence on its part be found, it appears as a matter of law that the plaintiff was guilty of negligence which proximately contributed to produce the injuries of which he complains.

The defendant's duties to securely guard the running belt so as to furnish the plaintiff a place of employment as free from danger as the nature of the employment would reasonably permit are defined by secs. 1636*j*, 2394—41, 2394—48, 2394—49, Stats. 1911. It plainly appears that the plaintiff

was engaged in performing labor in a place where there was machinery, belting, and appliances so located as to be dangerous to him in the discharge of his duties while in the exercise of ordinary care.    The nature and scope of defendant's duties toward the plaintiff under these statutes were considered and adverted to in *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650, and subsequent cases.    In *Besnys v. Herman Zohrlaut L. Co.* 157 Wis. 203, 147 N. W. 37, it was declared by this court that these statutes require ". . . the place and the method of carrying on the process of manufacture shall be as safe as the nature thereof will reasonably permit as regards safety devices and safeguards, reasonably adequate methods and processes, and any other thing reasonably necessary to protect the life, safety, and welfare of the employee, nor shall the employer require, permit, or suffer an employee to go or be in any employment or place of employment which is not as safe as the nature thereof will reasonably permit."    The case must be considered in the light of the duty imposed on the defendant by these statutes. Can it be said that the jury were justified in finding that the defendant failed to securely guard or fence the belt in question and that such failure to guard was the proximate cause of the accident which produced the plaintiff's injuries?    By their verdict the jury expressly find that the plaintiff was not injured as a result of a pure accident and without negligence by any one; neither by his right arm having been caught by a flap on the top side of the generator belt and thereby carried over the guard rail and drawn between the belt and pulley, nor when he applied cling-surface to the belt while standing at or near the motor.    The only other ground of negligence claimed was that the belt was not securely guarded or fenced, and the jury found the defendant failed in its duty in this respect.    An inspection of the record satisfies us that this finding is sustained.    The evidence shows that the defendant maintained a guard along the belt of the kind and in the po-

sition with respect to this rapidly moving belt as particularly described in the foregoing statement of the facts. Whether or not this guard, as constructed and maintained in relation to the moving belt, made the plaintiff's employment and place of employment as safe as the nature thereof reasonably permitted, was peculiarly one of fact for the jury to determine upon the evidence. The trial court was of this opinion, and in submitting the question to the jury instructed them that under the statute the defendant as employer was not bound to anticipate every possible danger to an employee from machinery, and that it was not required to guard or fence the belt in any particular manner or way or compelled to inclose the same by boxing it in, but that it was required to guard or fence the belt so as to be in fact securely guarded or fenced. The measure of the defendant's duty toward the plaintiff thus defined to the jury is as favorable to the defendant as the statute reasonably permits and must have operated to have the jury consider the case in the most advantageous view to the defendant. It is suggested that the evidence of the witness Kinsman, to the effect that the belt could have been guarded by boxing, was improper and against the defendant's rights on this question, and hence its submission was prejudicial and resulted in a mistrial. The statements of the witness do not go to the extent of limiting the employer to the manner of guarding the belt. Besides, the court directed the jury that the defendant was not required to guard the belt in any particular manner, but that any guard fulfilled the statutory duty if it in fact securely guarded against the danger to which the plaintiff was exposed in performing his duties when in the exercise of ordinary care. Upon the record the court properly submitted this question, of the safety of the place where the plaintiff worked and of his employment, to the jury. It is strenuously contended that the evidence wholly fails to sustain the finding that the defendant's failure to securely guard the belt was the proximate cause of the plaint-

iff's injuries.    It is undisputed that the plaintiff had his arm caught between the belt and pulley and thereby torn from his body.    The argument on this question is that it was impossible for the plaintiff to be drawn over the guard rail by coming in contact with the running belt while in the act of putting belt-cling on the inner surface of the lower half of the belt in the manner and at the place as he testified.    It is claimed that the running belt could not in any conceivable way have drawn him over the guard to the pulley.    Assuming, without deciding, that this contention is a proper and correct deduction from the plaintiff's evidence, yet this does not conclude the jury from finding upon the other evidence in the case that the absence of a secure and safe guard proximately caused the plaintiff's injury.    The jury were not bound to accept the plaintiff's explanation as to what caused him to fall over the railing and thus come in contact with the running belt and pulley.    It is reasonable that the plaintiff's mental distress incident to the injury naturally affected his recollection in some degree, or that on account of the momentary time within which the accident happened he could not note how it occurred, and hence that his impressions of the accident were inaccurate, and therefore the jury were not restricted to rely wholly on his evidence on this subject.    We consider that the jury were warranted in rejecting the plaintiff's narrative of the events of the accident if they were convinced that he labored under a mistake and they believed that the other evidence with reasonable distinctness showed that the failure to securely guard the belt caused him to come in contact with it and the pulley in some other way.    We are persuaded from the facts and circumstances of the case that the jury were justified in finding that the plaintiff, by reason of an insufficient guard, came in contact with the running belt while standing at a point either outside of the guard rail or near the post at the end of the guard on the east end of the

motor pulley, and by reason thereof fell upon the belt and was drawn toward the pulley, which caught his arm and tore it from his body. We are also convinced that the evidence justifies the inference that it was practicable to box the belt so as to inclose it up to the pulley with proper openings along the side to do the cling-surfacing, and that the omission of the defendant to so guard it justified the jury in concluding that such failure to guard proximately caused the plaintiff's injuries. Unless the evidence was such that no recovery is permissible in any view which can be properly taken of the evidence, the verdict and judgment must stand. Since the evidence in either view suggested sustains the finding of the jury on the question of proximate cause, the defendant's contention must be denied. *Smith v. Winnebago R. Co.* 153 Wis. 469, 140 N. W. 327; *Myers v. Pittsburgh C. Co.* 233 U. S. 184, 34 Sup. Ct. 559. Under this view of the case, the hypothetical question propounded to the witness Jarrett embraced an ultimate question which was properly one to be submitted to the jury as one within their range of knowledge as men of experience in the common affairs of life, and hence the court properly excluded it.

It is contended that the evidence shows that plaintiff must have been guilty of contributory negligence which proximately contributed to cause his injuries. An examination of the plaintiff's testimony in connection with the facts and circumstances warranted the jury in finding that he was free from contributory negligence. The facts and circumstances of the case furnish no grounds to declare as a matter of law that the jury had no right to accept the plaintiff's evidence in connection with the established facts of the case on this subject, and their finding, therefore, cannot be disturbed.

It is urged that the damages awarded are excessive. We have examined the evidence showing the nature and extent of the plaintiff's injuries and find that the amount awarded by

the jury to compensate the plaintiff for his injuries is not so clearly against the evidence on this question that this court can say that the amount awarded is excessive.

*By the Court.*—Judgment affirmed.

Marshall, J., dissents.

A motion for a rehearing was denied, with $25 costs, on October 6, 1914.