McNamer, Administratrix, Respondent, vs. American Insurance Company and others, Appellants.*

*September 9—October 5, 1954.*

* Motion for rehearing denied, with $25 costs, on December 7, 1954.

For the appellants there were briefs by *Roberts, Roe, Boardman, Suhr & Bjork* of Madison, and oral argument by *Walter M. Bjork.*

For the respondent there was a brief by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, and *Harry T. Jordan* of Hillsboro, and oral argument by *Leo J. Goodman.*

GEHL, J.   There is but one question raised by defendants upon this appeal, that is, Is there any credible evidence to support the jury's findings that Dempsey was negligent?

Plaintiff contends that because defendants failed in the trial court to move for a new trial they are not entitled to a review by us of the sufficiency of the evidence to sustain the judgment. This court has not been consistent in its treatment of the question. In *Reed v. Madison,* 85 Wis. 667, 672, 56 N. W. 182, we said:

"The law is that this court cannot properly review the evidence to determine whether it does or does not support the verdict and judgment, unless a motion for a new trial was submitted to the trial court. In the absence of such motion, this court has said: 'The verdict must be taken as sustained by the evidence, and the only questions to be inquired into upon an appeal from the judgment are the errors, if any, arising upon the trial in the admission or rejection of evidence, in the instructions of the court to the jury, or otherwise in the conduct of the trial.' *Anstedt v. Bentley,* 61 Wis. 629."

It was so held also in *O'Toole v. State,* 105 Wis. 18, 80 N. W. 915, and in *Ferry v. State,* 266 Wis. 508, 63 N. W. (2d) 741. We said in *Strnad v. Co-operative Insurance Mutual,* 256 Wis. 261, 270, 40 N. W. (2d) 552:

"It is well established that on appeal from a judgment the court will not review the sufficiency of the evidence to sustain the judgment unless there has been a motion for a new trial."

On the other hand, it has been held in a number of cases that there may be a review in such case, particularly in a situation such as is presented here, where there has been a denial by the trial court of a motion for a nonsuit or a directed verdict. *Second Nat. Bank of St. Paul v. Larson,* 80 Wis. 469, 50 N. W. 499; *McGinn v. French,* 107 Wis. 54, 82 N. W. 724; *Zahn v. Milwaukee & S. R. Co.* 114 Wis. 38, 89 N. W. 889; *Lawless v. State,* 114 Wis. 189, 89 N. W. 891; *Kopplin v. Quade,* 145 Wis. 454, 130 N. W. 511. We conclude that the rule to be applied is properly stated in *Plankinton v. Gorman,* 93 Wis. 560, 562, 67 N. W. 1128, where the court said:

"A motion for a new trial is only necessary to preserve for review errors committed by the jury. Errors committed by the court are reviewable without such motion. Improperly directing a verdict is such an error, which, if properly excepted to and preserved in the bill of exceptions, can be reviewed on appeal from the judgment."

We would add that improperly denying a motion for a directed verdict is also such error. *Richter v. Estate of Leiby,* 101 Wis. 434, 77 N. W. 745; *Wheeler v. Seamans,* 123 Wis. 573, 102 N. W. 28.

In *Ferry v. State, supra,* we said that defendant's contention that the evidence did not sustain a conviction could not be considered absent a motion to set aside the verdict and for a new trial. It will be observed, however, that in that case we stated that the court had given the entire record careful consideration and refused to disturb the conviction. In other

words, although the author's statement of the law is erroneous the court applied the correct rule—it did review the testimony.

Defendants contend that there is no credible evidence to support either of the jury's findings, that Dempsey was negligent as to his position on the highway, or that he was causally negligent as to driving under the influence of fermented malt beverages. Defendants do not attack the finding that Dempsey was intoxicated. They urge, however, that there was no basis for the finding that there was a causal relationship between that fact and the accident. They state the issue as follows:

"The question of Dempsey's intoxication may be of slight importance in this case. The real question is, Which driver was on the wrong side of the road? If Dempsey was on the wrong side, then there may well be a causal connection between his drinking and the accident. If, however, as appellants contend, Dempsey was on his own side of the road, there is no causal connection between his drinking and the accident."

We agree that the issue is correctly stated.

The roadway was surfaced with black-top, 21 feet in width, with a two-foot shoulder on each side. There was a guardrail consisting of posts connected with steel cables on each side. The center of the roadway was marked by a broken white line. The roadway was dry and at the point of the accident was fairly straight and level.

On direct examination Dempsey testified that just before the accident he was driving his truck at the rate of about 40 miles per hour; that he saw the automobile when it was two or three blocks away from him and that it was then on its own side of the road; that he was then on his side of the road; that when the vehicles were about three car lengths apart the McNamer car came across the center line, got over onto Dempsey's side of the road and hit the truck at the left run-

ning board and door; that the left front of the car struck the truck; that after the impact the car went under the corner of the rack of the truck; that the truck shoved the car back toward the north lane of traffic, the north side of the road; that when he first saw the car invading his lane of traffic he pulled over as close to the south guardrail as he could get; that he does not know whether he struck the guardrail at that time; that he was right close to the south guardrail when the vehicles came together; that when the vehicles collided his brakes failed and the truck proceeded along the guardrails and that it seemed finally that the truck hooked in the guardrail, turned sideways, and when it came to the end of the guardrail tipped over on its left side; that when the truck came to a stop it was facing due south, the front of it over the ditch on the south side of the road; that the front wheels of the truck were knocked from under it.

On cross-examination he testified that McNamer's car came into his lane of traffic, gradually at first, and then came "right over;" that the car came into his lane of traffic at an angle; that his truck continued on the south edge of the highway at all times and that he never entered the north lane of traffic or even the center of the highway until the truck was hurled around after the impact; that he was on his right-hand side as far as he could get; that after the accident the Mc-Namer car was backed up against the north guardrail; that after the accident he saw the car in the north lane of traffic facing southwest; that he did not know if all of it was in the north lane of traffic. At an adverse examination he had testified that the McNamer car was approximately three or four lengths away when it started curving across the road and came over until it hit his truck.

The testimony of Dempsey is without oral dispute. But plaintiff contends that it is incredible and unbelievable and is inconsistent with the physical facts. We do not believe as an original proposition that we should say that his story is

unbelievable or incredible; we are satisfied, however, that the jury might well have considered his state of intoxication and whether it affected his recollection so as to make his impressions of the occurrence inaccurate. Under those circumstances the jury was not restricted to rely wholly on his evidence. *Mayhew v. Wisconsin Zinc Co.* 158 Wis. 112, 147 N. W. 1035. But the fact that the jury was not required to believe him does not establish that he was on the wrong side of the road. The evidence must furnish proof of that fact and the rejection by the jury of his testimony does not of itself supply such proof.

It is said that ordinarily the probative value of the testimony of witnesses is not destroyed by physical facts unless the facts are such as to permit of but one interpretation. 20 Am. Jur., Evidence, p. 1034, sec. 1183; *Kleckner v. Great American Indemnity Co.* 257 Wis. 574, 44 N. W. (2d) 560. We consider, however, that the rule so strictly stated is not applicable here. As we have said, the jury was permitted to weigh Dempsey's testimony in the light of his condition and to treat it differently than is required in the ordinary case. Consequently, we must look to the record to ascertain whether there are physical facts permitting the inference that Dempsey was on the wrong side of the road and supporting the jury's finding that he was.

Several photographs taken right after the accident were received in evidence. One of them shows two parallel lines or "scrub" marks left in the highway surface and concededly made by some part of the truck. Plaintiff contends that these marks, when considered with the fact that the truck struck the south guardrail at its east end, shows that Dempsey was not traveling close to and parallel with the guardrail as he testified. We agree that the scrub marks were close enough to the center of the roadway to suggest that Dempsey was not driving as close to the guardrail as he said he was, but the marks do not permit of the inference, nor can they be read

to suggest, that at the time of the impact Dempsey was on the north side of the center line. The county sheriff and a traffic officer, one of whom took the photographs, testified that the marks started at "about the middle of the road" opposite the McNamer car. The photograph shows conclusively that no portion of the marks was on the north side of the highway.

After the collision the McNamer car was faced southwesterly on the highway, its rear against the north guardrail and its left front very near the center of the road. The sheriff testified that he observed on the night of the accident: "Right to the front of the vehicle [the McNamer car] on the road is the oil and radiator content beginning immediately under the car and flowing southwesterly across the eastbound lane." The traffic officer testified to the same effect. Plaintiff contends that the jury might properly have inferred that the location of the fluid under the front end of the McNamer car and north of the center line marks the point of impact, and that the inference so permitted warrants the finding that the Dempsey truck was at least partly north of the center line when the vehicles collided.

It is not disputed that the McNamer car came to rest after the collision on the north side of the highway. It is impossible that all the oil and radiator content found on the pavement dropped at one instant. Unquestionably the fluids flowed for some little time after the accident. The north extremity of the pool was found under the front of the car and north of the center of the highway. We consider that the location of the fluid proves nothing, except that the front of the car stood north of the center line of the highway after the accident, if proof of the fact were necessary.

The photographs show that most of the damage to the McNamer car was done to its left front. As we have pointed out, that portion of the car after the impact stood practically over the center line of the road. Its rear end had been pushed

against the north guardrail. These facts permit of only one inference, that is, that the car when it was struck must have been on the south side of the center line. If it had not been there, forced back as it was to the guardrail, its left front would certainly not have been found on the center line.

Plaintiff calls attention to a statement by the traffic officer that there was a spot of dirt and mud on the westbound lane near the McNamer car. The spot is not sufficiently described or its source identified so as to afford any evidence of where the collision took place.

Both officers testified that except for the oil and radiator content the only marks they saw on the highway at the scene of the accident were on the south side of the center line of the road. The traffic officer testified that "there was absolutely no debris whatsoever on the highway where you could establish a point of impact."

We find no testimony in the record which permits the inference, as counsel contends it does, that prior to the collision Dempsey was traveling in the north lane at an angle and was starting out of that lane traveling southeasterly when the collision occurred.

Plaintiff contends that the presumption that McNamer exercised due care for his own safety permits of an inference on the part of the jury and a finding that he was on his own side of the highway when the vehicles collided. This presumption ordinarily exists in the case of a deceased person but it ceases to have force when credible evidence is adduced which permits a contrary inference. We are unable to say that Dempsey's testimony is incredible or that it would not support findings favorable to him. It is evidence rebutting the presumption and takes the presumption out of the case.

In *Smith v. Green Bay*, 223 Wis. 427, 430, 271 N. W. 28, this court, quoting from 5 Wigmore, Evidence (2d ed.), p. 451, sec. 2491, said:

". . . it must be kept in mind that the peculiar effect of a presumption 'of law' . . . is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule."

In *McCarty v. Weber,* 265 Wis. 70, 73, 60 N. W. (2d) 716, we again quoted Wigmore with approval and said also that "all presumption of due care . . . went out of the case when the evidence sufficient to support a contrary finding came in." Thus the case of the plaintiff is left in such shape that she has failed to establish that Dempsey was guilty of causal negligence as to his position on the roadway. Consequently she cannot recover.

*By the Court.*—Judgment reversed. Cause remanded, with directions to enter judgment dismissing the complaint.