MITTELSTADT, Appellant, vs. HARTFORD ACCIDENT & INDEMNITY COMPANY and others, Respondents.

*October 8—November 5, 1957.*

For the appellant there was a brief and oral argument by *Donald L. Farr* of Eau Claire.

For the respondents Hartford Accident & Indemnity Company and Gerald F. Quigley there was a brief by *Stafford, Pfiffner & Stafford* of Chippewa Falls, and oral argument by *Robert F. Pfiffner.*

For the respondents Hardware Mutual Casualty Company and Anton Long there was a brief by *Wilcox & Sullivan* of Eau Claire, and oral argument by *Arthur B. Sullivan.*

MARTIN, C. J.   It is our opinion that the verdict must be upheld in so far as it finds Quigley was not negligent. There is nothing in the record which would appear to cast doubt upon his veracity. The only logical inference to be drawn from the physical facts is that Esther Long invaded the north lane of the road, as Quigley testified. Respondent refers to Exhibit 12, a photograph of the Long car, claiming it shows damage on the left front, the inference being that the impact was to the left front. We cannot see that the photograph bears out this contention. It shows clearly the impact was to the right front. Nor can we believe that it was impossible for the Long car to "move sideways" to be struck at its right front by the Quigley car traveling straight down the north lane, in the time involved. The testimony is not that it moved sideways but that it *turned* into the north lane. Respondent also urges that Quigley may have been distracted by his four small children in the car and momentarily invaded the wrong side of the road and then returned. There is nothing in the record to support such a conclusion, and Quigley testified to the contrary. The mere fact that the children were in the car does not suggest that Quigley was distracted by their presence; it could better suggest that he was using more than ordinary care, having regard for their safety.

*McNamer v. American Ins. Co.* (1954), 267 Wis. 494, 66 N. W. (2d) 342, grew out of a head-on collision between the automobile of the plaintiff, who was killed in the accident,

and the truck of one Dempsey, the only surviving witness. The jury found Dempsey causally negligent as to position on the highway and as to driving while intoxicated. Dempsey testified that he was always on his own side of the road; that the McNamer car invaded his lane. It was contended on appeal that there was no evidence that Dempsey was on the wrong side of the road and that there was no causal connection between Dempsey's intoxication and the accident. On reversing the judgment and ordering dismissal of the complaint against Dempsey and his insurer, this court said (p. 499):

"The testimony of Dempsey is without oral dispute. But plaintiff contends that it is incredible and unbelievable and is inconsistent with the physical facts. We do not believe as an original proposition that we should say that his story is unbelievable or incredible; we are satisfied, however, that the jury might well have considered his state of intoxication and whether it affected his recollection so as to make his impressions of the occurrence inaccurate. Under those circumstances the jury was not restricted to rely wholly on his evidence. *Mayhew v. Wisconsin Zinc Co.* 158 Wis. 112, 147 N. W. 1035. But the fact that the jury was not required to believe him does not establish that he was on the wrong side of the road. The evidence must furnish proof of that fact and the rejection by the jury of his testimony does not of itself supply such proof."

It was there pointed out that the physical facts permitted only one inference, that the plaintiff's car was on the wrong side of the road when it was struck.

In this case the jury's answer to the question of Quigley's negligence is fully supported by the evidence, and the judgment, so far as it dismisses the complaint against him and his insurance carrier, must be affirmed.

In addition to Dr. Quigley's testimony that the impact occurred in the north lane, Max Brookshaw, the county traffic officer who arrived at the scene shortly after the acci-

dent happened, testified that there were fresh gouge marks running northwest and southeast in the black-top southeast of the Quigley car and in the north lane; and that he found two blood spots, one north of the black-top, immediately to the rear of the Quigley car, and another in the north lane of traffic. Other than Brookshaw's statement that debris was scattered over the entire road, making it impossible to determine the exact point of impact, all the evidence is that the impact occurred in the north lane. The damage to the cars leads to the same conclusion. Assuming that Quigley were on the wrong side of the road, in order to produce the damage to the cars he would have had to be on the south shoulder and turning into the Long car. This would be an entirely unwarranted conclusion in view of the gouge marks, the blood spots, and the position of the cars after the accident. There is nothing in the record to make incredible Dr. Quigley's testimony as to where and how the accident happened.

As to the condition of the road surface in the vicinity of the accident, Brookshaw testified:

"There was a strip in the center of the road; it varied in width from two to three feet, and that was covered with a packed snow or ice and it was slightly higher than the road. . . . The rest of the highway was quite bare with the exception of the eastbound lane or it would be the south lane of traffic there was a narrow ridge from six inches to a foot wide right in the center of the eastbound lane. In other words, a car traveling east would be straddling this small ridge of icy packed snow. That ridge didn't run east—*this icy ridge started at approximately where the cars were standing and it continued in an easterly direction.*"

Exhibits 10 and 11, photographs which were taken on the morning following the accident, bear out Brookshaw's testimony in this respect. Exhibit 11 shows a car standing in the approximate position of the Long car after the accident and shows the condition of the highway over which Esther Long

had traveled just prior to the collision. The traveled portion is completely clear, the only ice and snow being the strip in the center of the road and on the shoulder. The ridge which an eastbound car would straddle, according to Brookshaw's testimony and as shown in the photograph, was east of the place of collision, an area of the highway which the Long car never reached.

Respondent Long contends that there was evidence showing that the point of accident was sheltered to the south and east by heavy trees and that the highway was icy and slippery in sheltered spots. The testimony referred to is that of Dr. Quigley in describing the portion of the roadway *he* had traveled prior to the accident, which was east of the place where the accident happened. Reference is also made to the testimony of Dr. Zenner, the first driver to arrive after the accident, and who skidded and almost lost control of his car when he tried to stop. Dr. Zenner's testimony made no reference to the condition of the highway over which the Long car had traveled. He was going west, the direction Quigley had driven; he was going 70 miles per hour, answering an emergency call to the hospital, and came upon the scene of the accident immediately after it happened while the plaintiff lay in the middle of the road. He testified:

"Ice was on the edge east, on the edge east and in the center; and as I applied my brakes the car pulled to one side and hit on the ice, and that is when I started to slue."

In the first place, he was describing the road east of the collision. Furthermore, he did not start to skid until the braking of his car at a speed of 70 miles per hour pulled it over to the edge where the ice was. Such evidence could in no way indicate that the Long car skidded.

On the contrary, a driver in the exercise of ordinary care, traveling at the speed of the Long car and having no reason to apply brakes or turn out of the dry, traveled portion of

the highway west of the point of collision, would not have skidded on the pavement in the condition it was the night of the accident. The invasion of the north lane by the Long car can be accounted for by Esther Long's lack of management and control,—an inference for the jury.

Appellant contends that the following instructions were erroneous and prejudicial:

"In connection with the first and third questions of the verdict you are further instructed that in order to answer either question 'Yes,' you must be satisfied by the required degree of proof that the damages sustained upon the occasion in question were not the result of an unavoidable accident. In other words, the burden of proof is upon any party claiming negligence to satisfy you to a reasonable certainty by a preponderance or greater weight of the credible evidence that said damages did not result from an unavoidable accident.

"By the term 'unavoidable accident' is meant an event which is not caused by negligence but takes place without anyone's foresight or expectation, an event from an unknown cause or an unusual or unexpected event from a known cause, a chance or casualty, anything occurring unexpectedly or without known or assignable cause or an event occurring without the negligence of any driver. Whether an unavoidable accident occurs does not depend upon the exercise of ordinary care nor is it prevented by the exercise of such care.

"The skidding of an automobile in itself does not imply negligence. It is a well-known physical fact that automobiles may skid on icy or slippery roads without fault either on account of the manner of handling the vehicle or on account of its being there. No negligence can be charged to the fact that either driver operated a vehicle that day on a slippery highway. Only in case the evidence shows to a reasonable certainty that such vehicle skidded by reason of some negligence on the part of the operator thereof can you find that such operator was negligent at the time of the collision.

"You are further instructed that Esther Long being dead and unable to testify as to the facts and circumstances surrounding the accident is presumed in connection with the particular respects where there is no actual evidence as to what her acts or omissions were to have been careful and to

have used due care and circumspection and she was not negligent in those respects. Further the law presumes that a person will use ordinary care to protect himself from danger and he will not knowingly and consciously place himself in imminent danger because of the natural intention of self-preservation. This presumption is rebuttable and disappears if there is credible evidence in the case reasonably tending to rebut and overcome it."

It was prejudicial error to instruct on the presumption of due care on the part of Esther Long. As held in the *McNamer Case, supra* (p. 502) :

"Plaintiff contends that the presumption that McNamer exercised due care for his own safety permits of an inference on the part of the jury and a finding that he was on his own side of the highway when the vehicles collided. This presumption ordinarily exists in the case of a deceased person but it ceases to have force when credible evidence is adduced which permits a contrary inference. We are unable to say that Dempsey's testimony is incredible or that it would not support findings favorable to him. It is evidence rebutting the presumption and takes the presumption out of the case.

"In *Smith v. Green Bay,* 223 Wis. 427, 430, 271 N. W. 28, this court, quoting from 5 Wigmore, Evidence (2d ed.), p. 451, sec. 2491, said:

"' . . . it must be kept in mind that the peculiar effect of a presumption "of law" . . . is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule.' "

The physical facts, as well as the testimony of Dr. Quigley, bring this case within the holding of the *McNamer Case.* The presumption of due care on the part of Esther Long disappeared upon the introduction of the credible evidence permitting the inference that she was not on her own side

of the road. The court should not have given the instruction; under the circumstances it was erroneous and prejudicial.

It should also be noted that the use of the language "knowingly and consciously" in the instruction is erroneous and prejudicial. From that wording the jury might well infer that it was necessary, in order to find Esther Long negligent, to find that she knowingly and consciously guided her car onto the wrong side of the road. Negligence in placing oneself in a position of danger involves inadvertence, not knowledge.

The instructions on skidding and unavoidable accident were likewise prejudicial. As pointed out above, the evidence was that the traveled portion of the highway on which Esther Long was driving was clear of ice and snow. Nothing in the physical condition of the pavement showed that she was operating on a "slippery highway." Furthermore, there was no evidence that her car skidded. Dr. Quigley's testimony was that the Long car "suddenly made a turn right into me."

Error is also assigned in the submission to the jury of the question whether Esther Long failed to exercise the skill and judgment which she possessed. The question should not have been submitted. In the first place, the question involves the assumption of risk and the defense of assumption of risk was not raised in any of the pleadings. It is an affirmative defense and must be specially pleaded. *Sandley v. Pilsner* (1955), 269 Wis. 90, 68 N. W. (2d) 808. Furthermore, there were no grounds for the submission of the question. The plaintiff testified that she often rode with Esther Long and that she was a good and careful driver. Dr. Quigley testified that from the time he first saw it the Long car traveled in its proper lane and that its invasion of his lane was a sudden turn. A guest does not assume the risk of a driver's sudden and momentary failure to exercise ordinary care unless the driver's conduct is a practice known to the guest and constant enough to attract the attention of a rea-

sonable person exercising ordinary care. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. (2d) 549, 63 N. W. (2d) 740.

There must be a new trial on the issue of Esther Long's negligence. No complaint is made about the damages assessed, so we assume the damages are established and it will not be necessary to retry that issue.

*By the Court.*—In so far as the judgment dismisses the complaint against Gerald F. Quigley and the Hartford Accident & Indemnity Company, it is affirmed. In so far as it dismisses the complaint against Anton Long, executor of the will of Esther Long, deceased, and Hardware Mutual Casualty Company, the judgment is reversed, and cause remanded for a new trial on all issues except damages.